[Crim. No. 406.  Third Appellate District.—February 18, 1918.]

## THE PEOPLE, Respondent, v. G. PERA, Appellant.

INTOXICATING LIQUORS—SALE WITHIN NO-LICENSE TERRITORY—LOCATION OF PLACE—EVIDENCE—TESTIMONY OF COUNTY CLERK.—In a prosecution for the crime of keeping a place of public resort in no-license territory for the purpose of sale therein of alcoholic liquor, testimony of the county clerk that the town in which the defendant kept such resort was outside of the boundaries of any incorporated city or town, and within a certain supervisorial district which had voted no-license, is sufficient to show that such place was within no-license territory.

ID.—APPLICATION FOR FEDERAL LIQUOR LICENSE.—In such a prosecution, the admission in evidence of a purported written application of the defendant for a federal liquor license without proof that the same was signed by him was erroneous, but without prejudice, where the other evidence sufficiently supported the verdict.

ID.—OTHER SALES.—In a prosecution for the crime of keeping a place of public resort in no-license territory for the purpose of sale in such territory of alcoholic liquor, testimony as to a sale of liquor made by defendant fourteen days prior to the commission of the date charged is admissible to show the character of the place and the purpose of the defendant.

ID.—INTENT TO COMMIT ACT—EXISTENCE IMMATERIAL.—In a prosecution for the crime of keeping a place of public resort in no-license territory for the purpose of sale in such territory of alcoholic liquor, it is not necessary to the consummation of the crime that an intent to commit the act be shown, since the mere commission of such act is sufficient to constitute the crime.

ID.—POSSESSION OF FEDERAL LIQUOR LICENSE—EFFECT OF—INSTRUCTION.—An instruction that the possession by defendant of a federal liquor license could not legally operate as a shield to any person shown to have committed the crime of keeping a public resort for the sale of alcoholic liquors in no-license territory, against the penal consequences thereof, is abstractly correct in the statement of the principle declared therein.

ID.—PUNISHMENT FOR OFFENSE—SENTENCE OF FINE AND IMPRISONMENT—INVALIDITY AS TO IMPRISONMENT.—Under section 19 of the local option law, limiting imprisonment upon conviction of any of the provisions of the law to seven months, a sentence to imprisonment for one month and to a fine of six hundred dollars, and in default of payment, imprisonment not exceeding one day for each two dollars thereof, is void as to imprisonment for nonpayment of fine.

APPEAL — MODIFICATION OF JUDGMENTS — JURISDICTION OF DISTRICT
COURT OF APPEAL.—The district court of appeal, before its judgments become final or before the causes in which such judgments are rendered are transferred to the supreme court upon petition, has the right or jurisdiction to modify its judgments, or set them aside if for good reasons such a course is required.

APPEAL from a judgment of the Superior Court of Merced County, and from an order denying a motion for a new trial and from an order denying a motion in arrest of judgment. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

L. J. Schino, and Terry W. Ward, for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

HART, J.—Defendant was informed against by the district attorney of the county of Merced for the crime of keeping a place of public resort in no-license territory for the purpose of sale in no-license territory of alcoholic liquor. The jury returned a verdict of guilty as charged in the information. Defendant made a motion in arrest of judgment and a motion for new trial, both of which motions were denied. Judgment was pronounced and, as entered in the minutes of the court, read as follows:

"It is ordered, adjudged and decreed that said defendant, G. Pera, be, and he is fined in the sum of $600, said sum to be paid to the clerk of this court, immediately, and in default of said payment of fine, said defendant to be imprisoned in the Merced County jail for a term not exceeding one day for each $2, of such fine so remaining unpaid. It is further ordered, adjudged and decreed that said defendant be, and he is hereby sentenced to serve a term of one month in the Merced County jail."

The appeal is from the judgment, the order denying the motion in arrest of judgment, and the order denying the motion for a new trial.

Appellant contends that the "judgment is excessive, void, and unintelligible."

It appears from the record that, at the time of pronouncing judgment, the court imposed the fine of six hundred dollars, with the alternative of imprisonment, and then the following colloquy ensued:

"The Court: Now, Mr. District Attorney, of course I don't think there is any question but what the court has the right to go ahead, after this kind of a judgment, and impose a sentence of imprisonment.

"Mr. McCray: I will just read the section.

"The Court: This imprisonment, of course, is only in default of the payment of the fine, that's all, and there is no imprisonment at all except for a default in the payment of the fine, that is only to compel the payment of the fine, that is all. It is therefore ordered, adjudged and decreed that you be imprisoned in the county jail of the county of Merced for the term of one month."

It is the contention of appellant that, under the first part of the judgment, imposing a fine of six hundred dollars, or imprisonment for one day for each two dollars of the fine, he may be compelled to serve three hundred days, while, in addition, under the second part of the judgment, he *must* serve one month without the alternative of a fine, a total of 330 days.

Section 19 of the Local Option Act (Stats. 1911, p. 604), under the provisions of which the defendant was tried and convicted, provides: "Any person violating any of the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding six hundred dollars, or by imprisonment in the county jail not exceeding seven months, or by both such fine and imprisonment."

Section 1205 of the Penal Code reads as follows: "A judgment that the defendant pay a fine may also direct that he be imprisoned until the fine be satisfied. But the judgment must specify the extent of the imprisonment, which must not exceed one day for every two dollars of the fine, nor extend in any case beyond the term for which the defendant might be sentenced to imprisonment for the offense of which he has been convicted."

It is manifest that the penal clause of the local option statute limits the power of the court to impose punishment by imprisonment to a term of seven months, and that, therefore,

the alternative punishment by imprisonment imposed by the court in this case for default in the payment of the fine of six hundred dollars imposed would, in case the fine were not paid, be in excess of the power of the court to inflict.

Section 1205 of the Penal Code originally read as follows: "A judgment that the defendant pay a fine may also direct that he be imprisoned until the fine be satisfied, specifying the extent of imprisonment, which must not exceed one day for every dollar of the fine."

The supreme court, in *Ex parte Rosenheim*, 83 Cal. 388, [23 Pac. 372], construing said section as it then read, held, quoting the syllabus: "When the court sentences a defendant to a term of imprisonment, and also to pay a fine, there can be no further imprisonment for nonpayment of the fine, under section 1205 of the Penal Code, that section not applying to cases in which the judgment is for a fine coupled with a sentence of imprisonment."

The attorney-general has cited us to no case giving section 1205 a different construction from that given it in the above case. He contends, however, that the amendment of the section by the legislature of 1891 (Stats. 1891, p. 52) so changed the section as to make the construction given it in the Rosenheim case inapplicable or without controlling force in determining the true meaning thereof as it now stands. The section as amended, it will be noted, besides changing the rate per day at which a fine shall be satisfied by imprisonment from one to two dollars, adds the following language to the section: ". . . nor [the imprisonment in case of fine] extend in any case beyond the term for which the defendant might be sentenced to imprisonment for the offense of which he has been convicted."

We feel frank enough to say that the Rosenheim case went to the extreme limit in holding section 1205 inapplicable to cases where "the court has imposed a term of imprisonment and also a fine." It seems to us that the section may justly be interpreted to mean that, where the law of the violation of which a person has been convicted authorizes the imposition of a sentence of imprisonment and also a fine, both a fine and a sentence of imprisonment may be imposed and the alternative of imprisonment ordered to satisfy the fine, provided the fine is such that the imprisonment for the nonpayment thereof, taken alone or together with the sentence of

imprisonment, will not have the effect of extending the imprisonment beyond the maximum term of imprisonment prescribed by the statute. But, as stated, the Rosenheim case, *supra*, goes further, and holds that section 1205 has no application to such a case, and since, as declared, our attention has been called to no subsequent decision of the supreme court overruling that case upon the point under consideration, this court is bound by the conclusion therein announced, assuming that there is no such change in section 1205 by reason of its amendment by the legislature of 1891 as to justify us in holding, as the attorney-general undertakes to point out, that the said amendment has rendered the Rosenheim decision without force in its application to said section. But, accepting, as we are required to do, the construction given section 1205 in the Rosenheim case, we perceive nothing in the language added to the section which warrants the conclusion that it should be given a different construction from that to which it is subjected in the case named or (in other words) that makes it any the less inapplicable now than before its amendment to cases where a fine, in addition to a sentence of imprisonment, has been imposed. Indeed, it seems to us that the purpose of the amendment was merely to make it plain that in no case should the alternative of imprisonment for default in the payment of a fine be such as would make the imprisonment extend beyond the maximum term of imprisonment which is prescribed for the offense of which the defendant is convicted. However, under the rule laid down in the Rosenheim case, we are constrained to hold that that portion of the judgment in this case whereby a fine of six hundred dollars, with the alternative of imprisonment in the county jail for a period of time not exceeding one day for each two dollars of such fine, was imposed, is void. But that portion of the judgment sentencing the defendant to a term of one month in the county jail is undoubtedly valid, and will have to stand.

It is next urged that the evidence was insufficient to justify the verdict, in that there is a failure of proof of the following essential facts: 1. That on or about the fourth day of February, 1917, defendant kept a place of public resort, where the alcoholic liquors specifically designated in the information were kept for the purpose of sale and distribution; 2. That the said town of North Dos Palos was not on said

date within the boundaries of any incorporated city or town; 3. That said supervisorial district was not then and there "no-license territory."

The testimony upon which the verdict was predicated may briefly be stated as follows:

J. R. Ryan, a deputy sheriff of Merced County, testified that he met the defendant at his place in South Dos Palos on Sunday, the fourth day of February, 1917; that he and Claud Wills, another deputy sheriff, had gone there with a search-warrant "to search for liquor in the place." He testified: "I went into a house. . . . This room has a bar in it; it has a big safe in it, and in this safe there is a whole lot of cases, there might be eight or nine cases in there, soda water, ginger ale and stuff on that order." He described the bar and fixtures and stated that, on the rack end of the bar, he found a half bottle of whisky. This bottle was produced and identified and admitted in evidence. The witness said that he saw a woman, afterward proven to be the wife of the defendant, in the back of the house who had two pitchers and was pouring something into the sink; that Mr. Wills took the pitchers from her and emptied the contents into two bottles, and these bottles, containing wine, were also received in evidence. The witness testified that, about ten minutes after he reached the premises, "the defendant drove into the yard, and Mr. Wills addressed him in my presence. He asked him if he was Mr. Pera, and he said he was; there was a little shed there (afterward proven to be about sixty feet from the house), and Mr. Wills asked him if that was his shed, and he said it was, and it had a lock on it, and Mr. Wills lifted the lock out and opened the door, where we found this stuff in there, and he asked him if that was his, and he said it was, and we proceeded to take it out and check it up to see how much was there. . . . While we were checking this stuff up Mr. Pera walked up within probably six or eight feet of me, and he had his hand laying on a little girl's shoulder, or head, I don't remember which, and he said to her: 'What do you know about these fellows,' he said, 'they are taking the bread away from you.'" There were identified, as having been taken from the shed, fifty-three bottles containing various liquors, and a case containing thirty-three bottles of beer, all of which were admitted in evidence. The

witness further said that defendant said that the house and shed and the liquors were his.

Claud Wills corroborated generally the testimony of witness Ryan. He said that when they searched the shed and found liquor there the defendant said that it was his and that it was "for the family use"; that he also said: "I don't deny selling any whisky"; that he said that he had sold liquor to one Wegner, "but Wegner did not have no bottle of his."

W. M. Morrison testified that, in December, 1916, and January, 1917, he was engaged as foreman of the construction of a school building at South Dos Palos, and that W. L. Wegner was a carpenter at work on said building; that some time between the 7th and 25th of January, 1917, he and Wegner went to a building and into a room which he said he supposed had been a saloon, because it had a bar, and that Wegner purchased and paid for a drink for each of them and that he (witness) drank beer. He said that he did not know the defendant and he indicated the house in which he had the beer by drawing a diagram on the blackboard.

W. L. Wegner was sworn as a witness and identified the building referred to by witness Morrison and indicated on the diagram drawn by him, and said that defendant told him that that property belonged to him. He corroborated the testimony of Morrison as to the purchase of drinks in the house and said that defendant sold them. A bottle of whisky was received in evidence which the witness said he had bought of defendant on the 21st of January, 1917. He described the building and stated that in front of it was a sign reading: "Hotel and saloon. G. Pera, Proprietor."

That the town of South Dos Palos was not, on the fourth day of February, 1917, situated within the boundaries of an incorporated city or town was sufficiently shown by the testimony of P. J. Thornton, the county clerk of Merced County, who first produced the record of the board of supervisors showing that, on November 5, 1912, the fifth supervisorial district outside of incorporated cities and towns voted in favor of no license and declaring that ninety days thereafter such territory should be "no-license territory," and then testified that since the said fifth day of November, 1912, there had been no "wet and dry election" in said district; that South Dos Palos was within the boundaries of the fifth

supervisorial district and that the town of Los Banos was the only incorporated city in the district.

While, it would seem, the prosecution could directly and more clearly have shown that South Dos Palos was not at the time mentioned within the boundaries of an incorporated city or town, still, as above stated, it was sufficiently shown by the statement of the county clerk that the town of Los Banos was then the only incorporated town situated within the boundaries of the fifth supervisorial district. It was not attempted to be shown, nor was it claimed, that South Dos Palos is situated within the incorporated limits of Los Banos, or is a part of that municipal corporation, and the fact that the two towns bear and are known by and under different names warranted the jury in concluding that South Dos Palos was no part of Los Banos, and that, the latter town having been shown to be the only incorporated town within said supervisorial district, the former town was not incorporated and formed no part of any incorporated town.

The contention that the evidence failed to show that the place kept by defendant in South Dos Palos was a public resort, at which alcoholic liquors were kept for sale and distribution, is not borne out by the record. As already shown, there was testimony tending to prove that in near proximity to the date of the arrest of the defendant, alleged in the information as about the time he sold and distributed intoxicating liquors at his place, the defendant sold various kinds of liquors to the parties giving that testimony; that on the 4th of February, 1917, the officers who searched his premises found a large supply of various kinds of liquors on his premises and in his possession; that the defendant admitted to the witness, Wegner, that he owned the place; that on the exterior of the building there was attached thereto a sign, bearing the words, "Hotel and Saloon"; that the defendant admitted to the witness, Wills, that he sold whisky there.

The foregoing was sufficient to justify the conclusion that the defendant kept a supply of alcoholic liquors at his place for the purpose of selling the same to anyone desiring to purchase them. Of course, it will not be disputed that a "public resort," within the contemplation of the statute, means any place, whatever the character of the building, where the public may purchase and obtain alcoholic liquors at any time they may be asked for. It may be true, and

doubtless is generally true, that where the traffic in such
liquors is forbidden and, therefore, illicit, the business of
dispensing the liquors may be carried on in a clandestine
manner, and that, in some instances, in the exercise of
caution, lest arrest and prosecution for the unlawful act may
follow, the dispenser may refuse to make the illicit sales to
some certain individuals; but even so, the place is neverthe-
less a public resort within the meaning of the law if there
be sales of such liquors to any part of the public. It is, in
brief, a place of public resort if it be a place to which any
part of the public are offered the opportunity to resort for
the purpose of purchasing alcoholic liquors.

It is claimed that it was prejudicial error for the court to
have admitted in evidence a map purporting to be the official
map of Merced County. The objections to it were that the
document offered as the map was only an unauthenticated
copy thereof, and that, the original having been made in
the year 1909, it could not show the fifth supervisorial dis-
trict as it existed at the time of the alleged commission of
the offense charged. As to the first objection, it is to be
answered that by the county clerk the map received in evi-
dence was shown to be a copy of the original map as pre-
pared by the county surveyor and accepted as the official map
of the county by the supervisors. As to the second ground
of objection, it is to be remarked that if the purpose of intro-
ducing the map in evidence was to show the boundaries of
the fifth supervisorial district and it failed to show such
boundaries as they are now established, or if there was a
difference between the boundaries as delineated on the map
and as they actually existed at the time the crime charged
is alleged to have been committed, and such difference was
of material importance to the defendant, then the latter's
counsel, in their objection to the map on that ground, should
have specifically pointed out such difference and called the
trial court's attention thereto. The mere objection, as coun-
sel stated it, that "the map of itself would not naturally show
the supervisorial district in 1917," was not, in our opinion,
sufficient to require the trial court to order the map excluded.
There is no presumption that the boundaries of said district
now or at the time the crime charged is alleged to have been
committed are any different from what they are shown to
be by the map. Indeed, if a presumption is allowable at all

with reference to the fact, we think it should be that the boundaries of the district continued to be precisely as they were when the map was made and as they are delineated thereon. (Code Civ. Proc., sec. 1963, subd. 32.) Moreover, if the map showed that South Dos Palos was not situated within the boundaries of said supervisorial district, the effect of allowing the map in evidence would the more likely be to assist rather than to injure the accused, or at least not to prejudice him.

It is claimed that the court seriously erred in admitting in evidence a document, offered by the people, purporting to be a written application by the defendant to the United States revenue office at San Francisco for a federal liquor license. While the document bore a certificate purporting to be that of the chief deputy revenue collector, setting forth that it was an exact copy of a document on file in his office and that it was "executed by G. Pera," it is very doubtful whether it was competent proof of the intent of the defendant or of the character of the business he was carrying on, since there was no proof that the name, "G. Pera," subscribed to the purported application, was signed or written by the defendant or that it was his signature, and since, furthermore, the purported certificate is not sealed or under a seal and there is no proof that the person signing his name thereto as "Chief Deputy Collector" attached his name thereto or that such name is his signature. But, in view of the other evidence in the case, of which a brief *résumé* is given above, and which is amply sufficient to support the verdict, we cannot say, after considering the entire record, that the result of the error in admitting the document in evidence, if error it was, has resulted in a miscarriage of justice. (Const., art. VI, sec. 4½.)

We think the testimony of the county clerk that there was no other incorporated town within the limits of the fifth supervisorial district was a proper and competent method of proving that fact. He stated, it is true, that he had no knowledge of that fact except such as he had obtained from an examination of "the records." We can conceive of no "records" which will affirmatively disclose that a particular town or city is not incorporated, but no doubt the witness knew from common notoriety that South Dos Palos was not incorporated, and we think upon such knowledge it was

proper for him to state the fact. But the courts may take judicial notice of the fact that a town or city is incorporated, if such be the fact, and in this case the court judicially knew that Los Banos was incorporated, and we may assume would have taken such notice of the fact of the incorporation of South Dos Palos, if it were an incorporated town, and have declared such knowledge to the jury, as it would have been its duty to do. No such declaration was made by the court to the jury, nor was there any request by the defendant that the court state to the jury that said town was incorporated. We are authorized to assume that if, in point of fact, the town of South Dos Palos was an incorporated town at the time the offense charged is alleged to have occurred, the defendant would have asked for an instruction to that effect. In the absence of such an instruction, the jury, without any consideration of the testimony of the county clerk upon that question, were warranted in finding that South Dos Palos was not an incorporated town at the time mentioned in the information or at the time referred to in the evidence.

It is also complained that the court erred in allowing the witness, Wegner, to testify that, on January 21, 1917—fourteen days prior to the date of the alleged commission of the offense—the defendant, at his place, in South Dos Palos, sold him whisky for which he paid the defendant the sum of thirty-five cents. This testimony was properly admitted, not for the purpose of proving another and distinct offense from that charged, but to show the character of the place and the purpose of the defendant. (*People* v. *Cavallini*, 29 Cal. App. 526, 531, [156 Pac. 73].) The information, as has been shown, charges the defendant with keeping a place of public resort in the designated no-license territory for the purpose of sale and distribution therein of certain specifically enumerated alcoholic liquors, and the sale by defendant to Wegner was so near the time at which the offense charged is alleged to have been committed that most clearly testimony of said sale tended to prove that the defendant did keep such public resort at or about the time named in the information.

At the close of the case for the people, counsel for the defendant moved the court to advise the jury to acquit on the ground that the state had failed to present sufficient proof to justify a verdict of conviction. The particular point upon which counsel relied for the support of their motion was that

there was a fatal paucity of proof of the location of the defendant's alleged place of public resort within the boundaries of the fifth supervisorial district, counsel asseverating that the only proof upon that subject was in the purported map of said district above referred to and that said map failed to show that the place was within said supervisorial district. Replying to this statement by counsel, the court remarked: "Well, we have other evidence here." Counsel excepted to the remark as improper and as tending to indicate to the jury that the court was of the opinion that "the other evidence" was such as to warrant a finding that the defendant's place was situated in said district. There is no merit in this point.

Necessarily, the court was compelled to determine, in passing upon the motion, whether there was sufficient evidence in the record upon all essential points to justify the submission of the case to the jury. This would have been the necessary effect of a denial of the motion even if the court had merely denied the motion without expressing any opinion in the presence of the jury as to whether there was evidence in proof of the fact stated other than that to which counsel called special attention. But the court had the right to express its views upon the motion and its reasons for holding it to be without a substantial basis, and a party making such a motion must expect this. Unless there is plainly and obviously a total failure of proof upon some essential element of the offense charged, the defendant, when making such a motion, merely takes a chance on the allowance of the motion, and himself must assume responsibility for and abide by the consequences of a denial of the motion and the incidents attending the ruling thereon, assuming, of course, that the court, in its ruling, if it denies the motion, does not trench upon the province of the jury by discussing and expressing an opinion upon the weight or evidentiary value of the testimony. In this instance, however, it will be observed that the court made no comment or expressed or intimated no opinion upon the weight or the effect of "the other evidence" to which it referred. It merely stated that there was other evidence addressed to the point and very properly left to the jury the question whether such "other evidence" was of sufficient probative force to satisfy their minds of the existence of the fact to which it related. Besides, had counsel

for defendant, previously to making and arguing their motion, requested the court to exclude the jury from the courtroom during the argument on the motion, such request would undoubtedly have been complied with, and there could have been no possibility of the jury hearing anything which might be prejudicial to defendant.

It is complained that the court erred and thus seriously prejudiced the rights of the accused by instructing the jury that it was not necessary to the consummation of a crime of the character of the one with which the defendant is here charged that there should exist and be shown an intent to commit the act, and that, therefore, all that the jury were required to find, to reach a verdict of guilty, was that the defendant kept a place of public resort for the purpose of selling and distributing alcoholic liquors within no-license territory—that the specific intent with which the act was done was immaterial. We think the rule as declared by the instruction is correct, in so far as it relates to a case of this character. The decisions appear to be quite uniform upon the proposition that where, in invoking and applying the police power, the legislature has prohibited certain acts and denounced them as criminal, the mere commission of such acts, regardless of the intent with which they were committed, is sufficient to constitute the crime so denounced. There are, perhaps, certain exceptions to this rule, as, for instance, where the statute itself uses language in describing or defining the crime indicating that *scienter* or a specific intent to do the act was essential to constitute it a crime. But particularly in cases interdicting the traffic in intoxicating liquors the rule generally is that the mere commission of the act is sufficient to consummate the offense, and in the present case the law authorizing the establishment of ''no-license territories'' uses no language indicating an intention in the legislature to make the intent with which the act of keeping a resort for the purpose of selling intoxicating liquors is committed an ingredient of the offense. In *Commonwealth* v. *Holstein,* 132 Pa. St. 357, [19 Atl. 273], the court, having before it a case in which the defendant had been convicted of the unlawful sale of alcoholic liquor, said: ''It is not necessary to sustain a conviction for selling intoxicating liquors under the act of 1887 for the commonwealth to prove a criminal intent. It is enough to show the sale, when the defend-

ant may, if he can, shield himself behind a license. If the
sale is contrary to law, the intent has nothing to do with it.
A contrary ruling would fritter away the. act of 1887, and
conviction under it would be rare.''

The instruction in which it was stated to the jury that the
payment of a federal license tax required by any law of
Congress to be paid by a person ''for carrying on any trade
or business'' does not exempt such person from any penalty
or punishment provided by the laws of the state for carry-
ing on such trade or business within such state, etc., was
manifestly intended to bear upon the testimony purporting
to show that the defendant applied to the United States in-
ternal revenue office for a liquor license, no such license
having been introduced in evidence. It is claimed that the
instruction was not pertinent to the case and prejudicial to
the defendant. While we have expressed a doubt as to the
competency of the written application by the defendant for a
federal liquor license, because it was not shown to have been
genuine, yet, as applied to that testimony, the instruction
was pertinent, inasmuch as the jury might have inferred from
that proof that the accused did secure and possess such a
license. Assuming, however, that that testimony was not
for the reason suggested admissible, and that, therefore, the
instruction was out of place, still, as we have shown, there
is sufficient competent testimony which, if believed by the
jury, as obviously it was, justified the verdict, and, moreover,
the court in plain and readily understandable language in-
structed the jury that a conviction could not legally be had
unless the evidence satisfied them beyond a reasonable doubt
that the accused sold alcoholic liquor at a place of public
resort kept by him in no-license territory; and the instruction
complained of here was abstract in form and abstractly cor-
rect in the statement of the principle declared therein. In
view of all these considerations, we cannot justly say that
the mere statement to the jury that the possession by the
defendant of a federal liquor license could not legally oper-
ate as a shield to any person shown to have committed the
act charged here against the penal consequences thereof—a
perfectly sound proposition of law—could have had the effect
unduly of influencing the jury in arriving at a verdict, or, at
any rate, of producing a miscarriage of justice.

The defendant complains of other instructions given and of the action of the court in disallowing a number proposed by him. We have carefully examined all these assignments and find nothing in them calling for special notice. The general charge of the court contained generally a full, fair, and pertinent statement of all the principles of law essential to an enlightened consideration by the jury of the evidence.

We have found no errors militating against the substantial rights of the accused and, accordingly, that portion of the judgment whereby the defendant was sentenced to imprisonment in the county jail of Merced County for the term of one month and the order denying the accused a new trial are affirmed. That portion of the judgment imposing upon the defendant a fine of six hundred dollars, with the alternative of imprisonment for default in the payment thereof at the rate of one day for every two dollars of such fine, is reversed. There is no appeal from an order denying a motion in arrest of judgment, and the pretended appeal from said order is therefore dismissed.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 20, 1918, and the following modified opinion rendered thereon:

HART, J.—The attorney-general, in a petition for a rehearing of this case, has called our attention to two cases, *People* v. *Brown,* 113 Cal. 35, [45 Pac. 181], and *People* v. *Kerr,* 15 Cal. App. 273, [114 Pac. 584], not cited in the original briefs, which bear upon the question whether the court in this case exceeded its jurisdiction in adjudging that the defendant, upon defaulting in the payment of the fine imposed, should be imprisoned for one day for every two dollars of said fine until the same is satisfied. It will be observed that, in the original opinion, we construed the broad language used in the case of *Ex parte Rosenheim,* 83 Cal. 388, [23 Pac. 372], as declaring or implying that section 1205 of the Penal Code had no application whatever to a case where a term of imprisonment and also a fine were imposed. The cases above mentioned do not appear to give that construction to said section. They seem to hold that the Rosen-

heim case merely meant to hold that in a case where both a
fine and an imprisonment are authorized to be imposed and
a sentence of imprisonment is adjudged, the court, while
having authority also to impose a fine, is without legal power
or authority, in case the fine be not paid by the defendant,
to impose the alternative of imprisonment at the rate of one
day for every two dollars of such fine until the same is so
satisfied. We say that this appears to be the construction
the Brown and Kerr cases, *supra,* put upon the language and
the decision in the Rosenheim case. We have, upon careful
reconsideration of the Rosenheim case, concluded that its lan-
guage is reasonably susceptible of that construction, and that,
as so construed, it gives the true meaning of section 1205 of
the Penal Code. At any rate, it is very clear that the Brown
and Kerr cases, which were decided after the Rosenheim case,
hold that, in cases in which the law authorizes the imposition
of both a fine and an imprisonment the defendant may be sub-
jected to both a fine and an imprisonment, but that in such case
the court has no authority to impose the alternative of im-
prisonment to satisfy the fine if the defendant defaults in
the payment thereof. That part of the judgment imposing
the fine nevertheless, however, constitutes a lien upon the
defendant's realty in like manner as a judgment for money
rendered in a civil action, and its payment may be enforced
by due proceedings. (Pen. Code, sec. 1206; *People* v. *Brown,*
113 Cal. 35, [45 Pac. 181].)

It follows that the judgment in this case imposing an im-
prisonment of thirty days in the county jail and also a fine
of six hundred dollars, except that part thereof providing
that in default of the payment of the fine the defendant
shall be imprisoned until the same be satisfied, is perfectly
valid.

The point herein discussed constitutes the sole and only
ground upon which a rehearing is asked by the attorney-
general. In view of that fact and of the further fact that
we are now firmly convinced that our former judgment in
the respect herein considered is erroneous, and, inasmuch as
the result sought to be obtained by the application for a
rehearing may as well be brought about by a modification of
the judgment heretofore rendered by this court herein, we
can perceive no good reason for reopening the case for the
further consideration of said point, and so defer the final

disposition of the case. Of course, it will not be questioned that this court, before its judgments become final or before the causes in which such judgments are rendered are transferred to the supreme court upon petition, still has the right or jurisdiction to modify its judgments or, indeed, set them aside, if for good reasons such a course is required.

Accordingly, the petition for a rehearing is denied; but the former judgment rendered herein by this court is hereby modified so as to read as follows: "That portion of the judgment appealed from by the defendant providing that the defendant, in default of the payment of the fine imposed, shall be 'imprisoned in the Merced County jail for a term not exceeding one day for each two dollars of such fine so remaining unpaid,' being void, is reversed. The remaining portion of the judgment appealed from and the order denying the defendant a new trial are affirmed. There is no appeal from an order denying a motion in arrest of judgment, and the pretended appeal from said order is, therefore, dismissed."

Chipman, P. J., and Burnett, J., concurred.