[Crim. No. 436.   Third Appellate District.—May 8, 1918.]

## THE PEOPLE, Respondent, v. FELIX ALLEN, Appellant.

INTOXICATING LIQUORS—PROSECUTION FOR SALE IN NO-LICENSE TERRI-
TORY—TRIAL—REFUSAL OF CONTINUANCE WITHOUT ERROR.—In a
prosecution for selling alcoholic liquor in no-license territory, the
refusal to grant a continuance for the purpose of giving the de-
fendant an opportunity to produce a witness who would testify
that he prepared at defendant's request a bottle of liquid resembling
whisky but containing less than the inhibited quantity of alcohol,
for sale for the purpose of playing a joke upon her, was not error,
since such evidence was addressed to the intent of the defendant,
which was immaterial.

ID.—IMPLIED INTENT TO VIOLATE LAW—INSTRUCTION.—In a prosecution
for selling liquor in no-license territory, where there is proof be-
yond a reasonable doubt that the defendant sold the liquor, an
instruction that in such a case the intent to violate the law is im-
plied, is a correct statement.

ID.—EVIDENCE—MEMORANDA.—While under section 2047 of the Code of
Civil Procedure a witness may refresh his memory respecting a
fact by anything written by himself, or under his direction, at the
time when the fact occurred, or immediately thereafter, or at any
other time when the fact was fresh in his memory, such section
does not authorize the introduction in evidence of memoranda in
corroboration of what a witness had testified to without resort to
the memoranda.

ID.—CHARACTER OF LIQUOR SOLD—EXPERT TESTIMONY UNNECESSARY.—
In a prosecution for the sale of alcoholic liquor in no-license terri-
tory, testimony of a person not an expert, familiar with the taste
of whisky, that the liquid sold was whisky, is admissible, since the
drinking of whisky is of such common occurrence that it does not
require an expert to pronounce upon it.

APPEAL from a judgment of the Superior Court of Modoc
County, and from an order denying a new trial.   Clarence A.
Raker, Judge.

The facts are stated in the opinion of the court.

Oscar Gibbons, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Dep-
uty Attorney-General, for Respondent.

CHIPMAN, P. J.—Defendant was informed against by the district attorney of Modoc County for the crime of unlawfully selling alcoholic liquors, to wit: "That on or about the twenty-ninth day of May, 1917, and before the filing of this information, at and in the county of Modoc, state of California, said Felix Allen then and there, within the incorporated limits of the town of Alturas, in said county, which was then and there no-license territory, willfully and unlawfully did sell and furnish alcoholic liquor, to wit: whisky, to one Lulu Sisson," contrary, etc. The cause was tried before a jury and defendant was found guilty. Judgment on the verdict was that defendant pay a fine of four hundred dollars and in default of payment that he be confined in the county jail of said county, one day for each two dollars of said fine. Defendant appeals from the judgment and from the order denying his motion for a new trial.

It is now urged that the court committed the following errors: 1. In refusing a continuance of the trial for the purpose of giving defendant the opportunity to produce the witness, A. Gibson; 2. Admitting expert testimony as to the character of the liquid introduced by the prosecution; 3. Rejecting testimony offered by defendant tending to show that, prior to the twenty-ninth day of May, 1917, the prosecuting witness, Lulu Sisson, was a spy; 4. Permitting the witnesses, Lulu Sisson and Mrs. Geo. Campbell, to be corroborated by their notes in writing made of matters to which they had testified; 5. In giving instructions numbers 1 and 5.

The information was filed on November 22, 1917, and defendant, being in court, was given until the next day, November 23d, in which to answer the arraignment, and on that day defendant pleaded not guilty and the cause was set down for trial on December 5, 1917. The cause then being called for trial, defendant moved for a continuance and the matter was continued to December 7, 1917. The proceedings had at the arraignment on motion for continuance were read and the court denied the motion and ordered the jury to be drawn. The motion for continuance was based in part upon the shortness of time between the arraignment and the date set for trial, defendant's attorney claiming that he had not sufficient time in which to prepare his defense, but principally the ground for the motion was based upon other facts set out in the defendant's affidavit filed in support of the motion, and

which related to the testimony of one A. Gibson, who, it is alleged, was a necessary witness in the case for defendant. It was stated in the affidavit that affiant was informed and believed that at said time the said Gibson was "either out of the state of California or at the southern extremity of the same, in the government service." That on November 23, 1917, defendant had caused to be issued a subpoena for said Gibson and placed in the hands of the sheriff of Modoc County, and that said sheriff has ever since been unable to locate said witness in said county of Modoc. That on the twenty-sixth day of November, 1917, defendant prepared an affidavit entitling him to a foreign subpoena for said witness, but owing to the absence of the judge of said court, was not able until the twenty-seventh day of November to obtain the necessary order, and on the twenty-eighth day of November he caused said subpoena to be deposited in the United States postoffice at Alturas, inclosed in a sealed envelope addressed to the sheriff of San Diego County, California, at San Diego, with postage prepaid thereon, and inclosing therewith a letter instructing said sheriff to serve the said subpoena and informing him that the said Gibson was in a United States training camp in San Diego County. That no return has ever been made by said sheriff of his proceedings under said subpoena, and no word has been received by defendant or his attorney in response to said communication. That said sheriff maintains an office in the city of San Diego, California, between which city and Alturas there is a regular communication by mail, and that the two places are more than one thousand miles apart. It is further alleged in the affidavit "that said A. Gibson is a necessary and material witness in this action, and without his testimony being had and taken at said trial I cannot safely proceed to trial. That I expect to prove by said witness that on the twenty-ninth day of May, 1917, between the hours of 1 and 2 o'clock in the afternoon thereof, I went to the drug-store then and there owned and operated by said A. Gibson in said town of Alturas, in company with divers other persons, and did then and there tell said A. Gibson, in the presence of said other persons that I had been asked by the Lulu Sisson mentioned in the information in this action to furnish her (the said Lulu Sisson) with a bottle of whisky. That I further told him that I desired to have his (the said A. Gibson's) assistance in mixing a bottle of liquid

resembling whisky as far as possible in color, smell, and taste, save that the same should not contain more than one per cent of alcohol. That said A. Gibson thereupon furnished certain appliances and assisted me in preparing said described liquid. That thereupon said liquid was placed in a quart bottle in the presence of said A. Gibson and said other persons and was wrapped in a piece of paper and by me taken to the house of said Lulu Sisson, in said town of Alturas." It is further alleged that the said Gibson is the only witness by whom affiant could prove that the said liquid contained only one per cent of alcohol or by whom he could prove the quantity or quality of all the ingredients contained in the liquid delivered to the prosecuting witness, Lulu Sisson. Affiant further states in his affidavit: "I further expect to prove by said A. Gibson that at divers times and places prior to the twenty-ninth day of May, 1917, that I have stated that Lulu Sisson was in my opinion trying to earn a reward by asking people to furnish her liquor, and that in my opinion anyone would be very foolish to accede to her requests." He further states that said A. Gibson will testify to the matters above set forth if his presence be had at said trial or if his deposition be taken, and that said Gibson is at present in or around the United States training camp in San Diego County.

On December 8th, while the trial was progressing, counsel for defendant again renewed his motion for a continuance, based on information which that day had been received by the sheriff of Modoc County by letter written to him by the sheriff of San Diego County, dated December 4, 1917, in which it was stated, among other things: "I am returning herewith subpoena *in re* People *v.* Felix Allen, which was sent to me for service. On going to the Camp Kearney, I found that this man had been discharged October 6, 1917." Considered with this second motion were the proceedings taken at the time the first motion was heard. As to the ruling of the court on defendant's motion made after the letter from the sheriff of San Diego County was received and the subpoena returned by him "not found," we cannot say there was prejudicial error. No additional facts were produced at this time and no assurance offered that the witness could be found. The case had progressed nearly to its conclusion. It would have been an unreasonable exercise of discretion for the court to continue the case at that stage to an indefinite period and

to excuse the jury with leave to return to their homes until such period might arrive. As to the ruling on the motion made at the arraignment and before the day for the trial was set and at the opening of the trial, we think enough appeared to justify the court in granting the continuance asked. But we cannot say, in view of the showing made, that its refusal demands a reversal of the judgment. The defense, indeed the only defense made, was that defendant knew the prosecuting witness, Lulu Sisson, to be a spy and was engaged in an effort to induce him to sell her a bottle of whisky in order to obtain the county reward offered; that he conceived the idea of "playing a joke upon her" by selling her a bottle of liquid resembling whisky, but in fact containing less than one per cent of alcohol; that he explained his scheme to several different persons and Dr. Gibson, a druggist in the town, who, as defendant testified, prepared a bottle of the simulated whisky, gave it to defendant, who immediately took it to Mrs. Sisson's home and sold and delivered it to her; and that this was the bottle and only bottle of liquid of any kind delivered by him to her.

It is perhaps best at this point to state the evidence on which the verdict was based, as it necessarily has much to do with our conclusion upon the several assignments of error. The evidence was that Mrs. Sisson was engaged in ferreting out violations of the no-license law; that she suspected defendant of being engaged in the illicit traffic in alcoholic liquor; that to confirm her suspicions, and, as she admitted, to earn the reward offered by the county, she sought a meeting with defendant at which he agreed to sell and deliver to her at her house a bottle of whisky at 2 o'clock in the afternoon of May 29, 1917; Mrs. Sisson arranged to have her sister-in-law, Mrs. Campbell, and Lily Ferraris, a house servant, so concealed as witnesses unknown to defendant and hear what took place when defendant came to the Sisson house. These three women testified that defendant came to Mrs. Sisson's house on the day and at the hour agreed upon; was admitted and stated to Mrs. Sisson he had brought her the bottle of whisky as he had promised to do, and told her the price was $1.50; that he took the bottle from his coat pocket and delivered it to Mrs. Sisson; that she found she had but $1.40, which she gave him, saying she would pay him the remaining ten cents when she next saw him; that he took the money and went

away. The conversation between Mrs. Sisson and defendant was testified to and there was substantial agreement in the testimony of these three witnesses as to what was there said and done, and it agreed substantially with the testimony of the defendant, except that he testified he did not know what was in the bottle. As soon as defendant departed, Mrs. Campbell and Miss Ferraris came out from their place of concealment, examined the bottle carefully, and were able to and did identify it when produced in court; Mrs. Sisson immediately notified Deputy Sheriff Estes, who came to her house in the evening of that day, uncorked the bottle, and drank of its contents. His testimony was that it was "good whisky"; the bottle was delivered to him at that time; he sealed it and thereafter it was cared for by him until it was brought into court in the same condition as when he received it. In the presence of the court and jury he removed the cork and again sampled the contents and pronounced it whisky. Dr. John Style, a practicing physician, was called as a witness. He testified that he had drunk whisky and could distinguish the difference between whisky and nonalcoholic liquids "by taste and smell—by taste practically." He sampled the contents of this bottle and pronounced it whisky.

It is not claimed that Dr. Gibson could or would testify, if present, further than that at defendant's request, and for the purpose defendant explained to him, he filled and gave to defendant a bottle resembling the one in evidence, but containing less than one per cent of alcohol. And the witness who saw the druggist in the act of making up the compound, whatever it was, testified that they saw the bottle delivered to defendant by Dr. Gibson and saw defendant immediately thereafter drive in his automobile to and enter Mrs. Sisson's house. What defendant did after entering the house they knew not. The most that can be claimed from what Dr. Gibson could testify to and what the witnesses who testified saw done by him and by defendant is, that the mixture prepared by Dr. Gibson contained less than the inhibited per cent of alcohol, and that these facts tended to show an innocent intent on defendant's part. If Dr. Gibson gave defendant a bottle whose contents were innocuous, the evidence conclusively shows that it was not the one delivered to Mrs. Sisson by defendant, and as it is not pretended that this change of bottles could have happened through any agency other than defendant's, it entirely overthrows any inference of innocent intent to be drawn

from anything Dr. Gibson could have testified to. But the law upon this question of intent, in this class of cases, treats the element of intent as immaterial. The rule is stated as follows in the case of the *People* v. *Pera,* 36 Cal. App. 292, [171 Pac. 1091] : ''The decisions appear to be quite uniform upon the proposition that where, in invoking and applying the police power, the legislature has prohibited certain acts and denounced them as criminal, the mere commission of such acts, regardless of the intent with which they were committed, is sufficient to constitute the crime so denounced. There are, perhaps, certain exceptions to this rule, as, for instance, where the statute itself uses language in describing or defining the crime indicating that *scienter* or a specific intent to do the act was essential to constitute it a crime. But particularly in cases interdicting the traffic in intoxicating liquors the rule generally is that the mere commission of the act is sufficient to consummate the offense, and in the present case the law authorizing the establishment of 'no-license territory' uses no language indicating an intention in the legislature to make the intent with which the act of keeping a resort for the purpose of selling intoxicating liquors is committed an ingredient of the offense.''

The case of *Commonwealth* v. *Holstine,* 132 Pa. St. 357, [19 Atl. 273], is cited, where the court said: ''It is not necessary to sustain a conviction for selling intoxicating liquors under the act of 1887 for the commonwealth to prove a criminal intent. It is enough to show the sale, when the defendant may, if he can, shield himself behind a license. If the sale is contrary to law, the intent has nothing to do with it. A contrary ruling would fritter away the act of 1887, and conviction under it would be rare.''

Section 13 of the act of April 4, 1911 (Stats. 1911, p. 599), provides as follows: ''It shall be unlawful for any person, . . . within the boundaries of any no-license territory to sell, furnish, distribute or give away any alcoholic liquors except as provided in section 16 hereof.'' (Nothing in said section 16 has reference to the facts in this case.) Plainly the rule applies in cases arising under this section, as it did in *People* v. *Pera,* which arose under the same statute though for a different offense.

This rule of law furnishes sufficient answer to defendant's points above designated as 1, 3, and 5. Dr. Gibson's testi-

mony, as we have seen, would have been addressed to the question of intent, as would testimony that defendant had knowledge, prior to the twenty-ninth day of May, 1917, that Mrs. Sisson was a spy, for the purpose of that testimony was to bolster up defendant's claim that he was playing a joke upon her and hence had no intention to violate the law.

As to instructions 1 and 5, they both in effect charged the jury that the intent to violate the law is implied upon proof beyond a reasonable doubt that the defendant sold to Mrs. Sisson at the time named, within the limits of the town of Alturas (admittedly no-license territory), alcoholic liquor, to wit, whisky containing more than one per cent of alcohol. A similar instruction in *People* v. *Pera, supra,* was given and was held to be a correct statement of the law.

The testimony that the bottle, with its contents, as it was sold and delivered to the prosecuting witness, was the same bottle, with the same contents, which was brought into court is not controverted; nor is there any evidence that the liquid in this bottle was other than whisky, and there was evidence that it contained fifteen per cent alcohol. The bottle was passed to the jury, who were, without objection, "permitted to smell the contents and taste it if they desire." The jury examined the bottle, but it does not appear that they drank any of the contents. Defendant offered no evidence that the contents were not whisky.

As to defendant's second point, he says in his brief that "the only point in dispute between prosecution and defendant was, What was the character of the liquid delivered to Mrs. Sisson?" The contention is that under paragraph 9, section 1870, of the Code of Civil Procedure, only one who "is skilled therein" can give "his opinion on a question of science, art, or trade." Witness Estes concededly did not testify as an expert. He testified, however, that he was familiar with the taste of whisky and had drunk of different brands; that he could distinguish between the taste of whisky and brandy, and his opinion was quite emphatically given that the bottle in question contained whisky.

In the case of *People* v. *Monteith,* 73 Cal. 9, [14 Pac. 373], a nonexpert witness was permitted to testify that a person at a given time was intoxicated, the court saying: "Drunkenness is, unfortunately, of such common occurrence, that it does not require an expert to pronounce upon it. We think the

case falls within the principle of *People* v. *Sanford*, 43 Cal. 32, 33.'' Likewise we may safely say that the drinking of whisky is, unfortunately, of such common occurrence, that it does not require an expert to pronounce upon it. We do not think it was necessary for the people to have caused a chemical analysis of this liquid to be made, but that it was competent to establish *prima facie* that the liquid in question was whisky by the opinion of persons who were accustomed to the use of whisky. The way was open to defendant to rebut this evidence either by causing an analysis to be made of the liquid or by having other witnesses familiar with the taste of whisky to test it and give their opinion. He did neither, but rests wholly on the incompetency of the witness Estes to testify. We do not think the court erred in its ruling.

Appellant claims that the court erred in permitting Lulu Sisson and Mrs. Campbell to be corroborated by their notes taken of what occurred when defendant was at Mrs. Sisson's house. It appeared that after he had gone they entered in a memorandum-book what they remembered of the occurrence. After they had testified to the facts without consulting their memoranda or finding it necessary to do so, the district attorney, over objection, was allowed to introduce this book showing what these witnesses had written down therein. Substantially it agreed with their testimony. We think this was error. Under section 2047 of the Code of Civil Procedure, a witness may ''refresh his memory respecting a fact, by anything written by himself, or under his direction, at the time when the fact occurred, or immediately thereafter, or at any other time when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing.'' But where the witness can and does testify fully as to the facts without resort to his memorandum, we do not think he can be corroborated by the introduction of his memorandum. We think, however, that the ruling was without prejudice. Section 4½ of article VI of the constitution would seem to apply here.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 2, 1918.