[Crim. No. 4533. In Bank. July 21, 1944.]

THE PEOPLE, Respondent, v. EDSEL GRAY RALPH et al., Defendants; RAYMOND JAMES CANTLON, Appellant.

[Crim. No. 4535. In Bank. July 21, 1944.]

THE PEOPLE, Respondent, v. EDSEL GRAY RALPH et al., Appellants.

Frederic H. Vercoe, Public Defender, William B. Neeley, Deputy Public Defender, and Gladys Towles Root for Appellants.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

SCHAUER, J.—Each of the three defendants in these consolidated cases pleaded guilty to charges of committing robbery while armed with a deadly weapon. The court thereupon "Upon a statement of facts and by stipulation of counsel" found the crimes to be robbery of the first degree, granted the requests of defendants for leave to file applications for

probation, and set a time (later postponed) for hearings upon such applications and for the pronouncement of judgments and sentences. The record shows that defendant Cantlon was then 18 years of age and defendants Ralph and Chandler were each 20. On March 31, 1943, the day to which such hearings were continued, each defendant moved, under the provisions of the Youth Authority Act (Welf. & Inst. Code, §§ 1700-1783) to be certified to the Youth Correction Authority (now known as the Youth Authority) pursuant to the terms of section 1731.5 of the act. The court denied the motions for such certification, as well as the applications for probation, and sentenced each defendant to the state prison for the term prescribed by law (Pen. Code, § 1168). From the judgment and sentence against him each defendant appeals.

The sole contention advanced is that the trial court erred in refusing to commit the defendants to the Youth Authority. We have concluded that a liberal interpretation of the Youth Authority Act, as intended by the Legislature (Welf. & Inst. Code, § 1700), requires that such contention be sustained.

Although section 1731.5 of the act has been amended in certain respects since these defendants were convicted, the amendments are not of such nature as to alter the construction or effect to be given the section on these appeals. Therefore, we are here quoting the section as it now reads, but with insertions indicating the amendments: "After certification to the Governor as provided in this article and until January 1, 1946 [formerly 1944], a court shall commit to the Authority any person convicted of a public offense whom the Authority believes can be materially benefited by the procedure herein provided for, and for whose care and maintenance there exists, in the opinion of the Authority, proper and adequate facilities, and who (a) Is found to be less than 21 [formerly 23] years of age at the time of apprehension. (b) Is not sentenced to death, imprisonment for life, imprisonment for not more than 90 days, or the payment of a fine. (c) [Added in 1944] Is not granted probation."

At the time defendants were convicted the Youth Authority had certified in writing to the Governor that it was prepared to properly discharge its duties and functions (see Welf. & Inst. Code, § 1730). Defendants contend that therefore the court had no alternative but to commit them to the Youth

Authority pursuant to the provision of section 1731.5 that a court "shall" so commit all persons falling within the specifications of the section. The state's position, however, and its sole contention, is that by the provisions of subdivision (b) of the section defendants are barred from coming within such specifications, for the reason that although the minimum punishment for the crime of which they were convicted — first-degree robbery — is five years' imprisonment in the state prison, the maximum term is not prescribed by statute (see Pen. Code, § 213), and therefore the sentence for the crime is imprisonment for life until such time as a lesser term may be fixed by the Board of Prison Terms and Paroles. (See Pen. Code, §§ 3000, 3020.)

That this court has held that for certain purposes an indeterminate sentence under a law which fixes no maximum term, prior to action by the authorized board, is in effect a "life sentence," is indisputable. In *People* v. *McNabb* (1935), 3 Cal.2d 441, 444-445, 456-457, we said (pp. 444-445) [45 P.2d 334], "The penalty prescribed for robbery in the first degree is 'not less than five years'. (Pen. Code, § 213.) The maximum therefore is a life sentence, subject to be shortened by the action of the state board of prison terms and paroles, as provided by the provisions of section 1168 of the Penal Code. Until action is taken by said board fixing a shorter duration of imprisonment than life it is uniformly held 'that the indeterminate sentence is in legal effect a sentence for the maximum term. It is on this basis that such sentences have been held to be certain and definite, and therefore not void for uncertainty.' (*In re Lee,* 177 Cal. 690 [171 P. 958], citing many supporting cases.) . . . [Pp. 456-457.] The authorities of this and many sister states which have an indeterminate sentence law similar to ours hold that a statute which prescribes a minimum sentence of not less than five years and with no maximum is in law a life sentence until and unless a court or executive board charged with the duty of fixing prison terms remits a portion of the life term. This question was definitely settled by *In re Lee,* 177 Cal. 690 [171 P. 958], in 1918 and has been the pronounced law of the state since." See, also, *People* v. *Jones* (1936), 6 Cal.2d 554, 556 [59 P.2d 89]; *In re Daniels* (1930), 106 Cal.App. 43, 45 [288 P. 1109]; *People* v. *Hayes* (1935), 9 Cal.App.2d 157, 160 [49 P.2d 288];

*People* v. *Meyers* (1939), 31 Cal.App.2d 515, 517 [88 P.2d 212].

For their side of the controversy defendants point to the line of cases, commencing with *People* v. *Clough* (1881), 59 Cal. 438, 441, and including *People* v. *Riley* (1884), 65 Cal. 107, 108-109 [3 P. 413]; *People* v. *Fultz* (1895), 109 Cal. 258, 259-260 [41 P. 1040]; *People* v. *Logan* (1899), 123 Cal. 414, 416-417 [56 P. 56]; *People* v. *Sullivan* (1901), 132 Cal. 93, 94 [64 P. 90], and *People* v. *Purio* (1920), 49 Cal.App. 685, 687 [194 P. 74], which have established and uninterruptedly held that although section 1070 of the Penal Code provides that a defendant charged with an offense "punishable with death, or with imprisonment in the state prison for life . . . is entitled to twenty . . . peremptory challenges" to jurors, and that "On a trial for any other offense, the defendant is entitled to ten . . . peremptory challenges," nevertheless it is "only in capital cases, or cases in which a life sentence is *in terms* affixed by the Legislature as the punishment of the crime, that the defendant is entitled to twenty peremptory challenges." (*People* v. *Clough* (1881), *supra.*) It may be noted that in *People* v. *Purio* (1920), *supra,* in which the trial court's action in allowing defendants accused of robbery (punishable by imprisonment in the state prison for not less than one year, Pen. Code, § 213) only ten peremptory challenges was approved on appeal, the further statement is made (at p. 687 of 49 Cal.App.) that "the recent [in 1917] change in the law providing for an indeterminate sentence has not affected the rule in reference to the number of peremptory challenges."

Defendants urge that the phrase *"punishable* with . . . imprisonment . . . for life" (italics added) as contained in section 1070 of the Penal Code is patently "broader in its inclusive effect" than the phrase *"sentenced* to . . . imprisonment for life" (italics added) which appears in subdivision (b) of section 1731.5 of the Youth Authority Act, and that if it is reasonable to construe the language of the Penal Code section as limiting a defendant to ten peremptory challenges excepting only when the crime of which he is accused carries a *minimum* punishment of life imprisonment, then the case is manifestly stronger for these defendants who seek commitment to the Youth Authority. That is to say, we cannot consistently

hold that the phrase "sentenced to . . . imprisonment for life" is more inclusive than the phrase "punishable with . . . imprisonment . . . for life" when exactly the opposite would appear to be the more reasonable interpretation. And if we indulge that more reasonable interpretation it would seem that a defendant, for the purposes of the Youth Authority Act, could not be held to have been "sentenced to . . . imprisonment for life" unless the sentence prescribed by law carried a minimum or fixed punishment of life imprisonment.

The two lines of decisions hereinabove discussed are obviously conflicting insofar as their analogous application to the question involved in the cases of these appealing defendants is concerned. This, however, does not mean that either line need be overruled in order to dispose of the pending cases. Each line has become established over a long period of years as defining the law in the particular matters to which it respectively relates. The question before us is not one which is necessarily concluded by either of the two series of holdings. It is proper, therefore, in reaching a conclusion, to consider the purpose of the particular statute and certain fundamental rules governing the construction of criminal laws generally.

In the statute itself the Legislature has declared (Welf. & Inst. Code, § 1700) that "The purpose of this . . . [act] is to protect society more effectively by substituting for retributive punishment methods of training and treatment directed toward the correction and rehabilitation of young persons found guilty of public offenses. To this end it is the intent of the Legislature that the . . . [act] be liberally interpreted in conformity with its declared purpose." A similar purpose motivated the adoption of the indeterminate sentence law (Pen. Code, § 1168) under which defendants were sentenced. It apparently is the purpose of the Legislature that, as to youthful offenders within the limits prescribed (whatever they may be), the indeterminate sentence law and the Youth Authority Act shall be construed and applied to work together as complementary parts of a more enlightened penal system. Apropos of the purpose of the indeterminate sentence law this court stated (in *In re Lee* (1918), 177 Cal. 690, 692-693 [171 P. 958]), "It is generally recognized by the courts and by modern penologists that the purpose of the indeterminate sentence law, like other modern laws in relation to the

administration of the criminal law, is to mitigate the punishment which would otherwise be imposed upon the offender. These laws place emphasis upon the reformation of the offender. They seek to make the punishment fit the criminal rather than the crime. They endeavor to put before the prisoner great incentive to well-doing in order that his will to do well should be strengthened and confirmed by the habit of well-doing. Instead of trying to break the will of the offender and make him submissive, the purpose is to strengthen his will to do right and lessen his temptation to do wrong.'' From the foregoing discussion and quotations it appears that adoption of the construction of the Youth Authority Act sought by defendants would be consistent with the declared and recognized ideals of both that act and the indeterminate sentence law.

When language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted. In other words, criminal statutes will not be built up ''by judicial grafting upon legislation. . . . [I]t is also true that the defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute.'' (*Ex parte Rosenheim* (1890), 83 Cal. 388, 391 [23 P. 372]; *People* v. *Sayre* (1937), 26 Cal.App.2d Supp. 757, 761 [70 P.2d 546].)

We have noted that the motion of each defendant to be committed to the Youth Authority was made prior to the actual imposition of any sentence upon him, and that therefore, strictly speaking, none of the defendants had been ''sentenced to . . . imprisonment for life'' (§ 1731.5, subd. (b) of the act) or to any other term at the time he moved to be so committed. However, we have recently held that commitment to the Authority is ''a pronouncement of the sentence for the offense, namely, commitment to the Authority for the term prescribed by law'' (*In re Herrera* (1943), 23 Cal.2d 206, 214 [143 P.2d 345]). Therefore, in reaching our conclusion herein, we do not rely in any degree upon the fact that literally no sentence had been pronounced against any of the defendants at the time they moved to be committed to the Youth Authority.

582

■ Assuming, however, that the sentences had been pronounced at the time defendants moved for certification to the Authority it is still true that in literal actuality these defendants had not been sentenced to *life imprisonment*. As stated in the persuasive argument of Deputy Public Defender William B. Neeley, ''They are sentenced to the term prescribed by law and the *legal effect* of such a sentence is to place them under the control of the Parole Board for the possible maximum term, to wit, life imprisonment. There has, however, been no *sentence* to life imprisonment and sentence is an essential element of the exception stated in Section 1732 [and Section 1731.5].'' We are not disposed to hold that the fact that *the legal effect of the sentences for some purposes* is equivalent to that of sentences to life imprisonment, operates to deprive the defendants of a right to which they may be entitled if they have not been ''sentenced to . . . imprisonment for life.''

There is a cognizable difference between a sentence to imprisonment for ''the term prescribed by law'' which it is the duty of the authorized board to resolve into a sentence to imprisonment for a term of five years or more, and a sentence to imprisonment for life. The difference is similar to that which has been recognized in a long line of decisions beginning with *Ex parte Rosenheim* (1890), *supra,* 83 Cal. 388, and including *In re Collins* (1890, Supreme Court of California), 23 P. 374; *People* v. *Hamberg* (1890), 84 Cal. 468, 475 [24 P. 298]; *Lowrey* v. *Hogue* (1890), 85 Cal. 600, 602 [24 P. 995]; *People* v. *Brown* (1896), 113 Cal. 35, 36 [45 P. 181]; *Roberts* v. *Howells* (1900), 22 Utah 389 [62 P. 892]; *People* v. *Kerr* (1911), 15 Cal.App. 273, 276 [114 P. 584]; *Reese* v. *Olsen* (1914), 44 Utah 318 [139 P. 941, 942]; *People* v. *Pera* (1918), 36 Cal.App. 292, 307 [171 P. 1091]; *People* v. *Velarde* (1920), 45 Cal.App. 520, 530 [188 P. 59]; *People* v. *Sayre* (1937), *supra,* 26 Cal.App.2d Supp. 757, 766.

' In the Rosenheim case this court considered and construed the language of section 1205 of the Penal Code providing that ''A judgment that the defendant pay a fine may also direct that he be imprisoned until the fine is satisfied . . .,'' and held that (p. 390 of 83 Cal.) ''section 1205 is inapplicable to cases in which the court has imposed a term of imprisonment *and also* a fine. [Italics added.] . . . There is nothing in the letter of this statute, we think, which indicates **an intention to make**

it applicable to cases in which the court itself fixes a term of imprisonment absolute, and then imposes a fine. . . . [P. 391.] If those who framed and adopted section 1205 had intended it to apply to judgments that the defendant be imprisoned for a certain term fixed by the court and pay a fine, it would have been easy to have so declared." ▮ It may be said with equal verity that if those who framed and adopted the Youth Authority Act had intended that all youths subject to indeterminate sentences for terms without fixed maximums should be excluded from the procedures of the act it would have been easy to have so declared. In the absence of such express legislative exclusion we shall not read it into the statute.

▮ The conclusion that these defendants are entitled to be *certified to* the Authority obviously does not mean that the Authority must accept them or that they are entitled to remain under it. Those are questions which the administrators of the act must determine, in the exercise of a sound discretion, and unless they are satisfied as to each defendant that he "can be materially benefited" by the procedure and that for his "care and maintenance there exists . . . proper and adequate facilities" (Welf. & Inst. Code, § 1731.5), it will be their duty to return such defendant to the superior court or to take such other action as under the circumstances may be proper, to the end that he shall be committed to the proper penal institution.

The judgments of commitment to the state prison are reversed and the causes are remanded to the trial court, with directions to grant the respective motions of the defendants for certification to the Youth Authority.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Traynor, J., concurred.