[Crim. No. 40.   Department Two.—December 26, 1895.]

THE PEOPLE, RESPONDENT, *v.* JOHN SHAUGH-NESSY, APPELLANT.

CRIMINAL LAW.— LARCENY—CONSPIRACY TO DEFRAUD — BUNCO GAME.— Where the possession of the money of the prosecuting witness was obtained by a conspiracy on the part of the defendant and the manager of a lottery, to cheat and defraud the prosecuting witness by what is known as the "bunco game," and it appears that the prosecuting wit-ness did not intend to part with his property in the money, and that it was obtained from him by the grossest fraud, the defendant may be prosecuted and convicted of larceny therefor.

ID. — INSTRUCTIONS — READING OF CODE — FRAUDULENT OBTAINING OF MONEY.—Instructions of the court must be read together as a whole, and where the court sufficiently instructs the jury as to the evidence required in order to convict the defendant of larceny under section 484 of the Penal Code, the fact that it reads to the jury section 332 of the Penal Code, in regard to the fraudulent obtaining of money by methods which do not necessarily constitute larceny, is not ground for a reversal of a judgment of conviction of larceny.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. EDWARD A. BELCHER, Judge.

The facts are stated in the opinion.

*A. B. Treadwell*, for Appellant.

*W. F. Fitzgerald*, Attorney General, and *Charles H. Jackson*, Deputy Attorney General, for Respondent.

Section 484 of the Penal Code, defining larceny gen-erally, is broad enough to cover the kinds of larceny

denominated in section 332, and all other forms of larceny. (*People* v. *Smallman*, 55 Cal. 185; *People* v. *Rae*, 66 Cal. 425; 56 Am. Rep. 102; *People* v. *Raschke*, 73 Cal. 381; *Commonwealth* v. *James*, 1 Pick. 375, 384; 2 Wharton's Criminal Law, 1848; *Defrese* v. *State*, 3 Heisk. 53; 8 Am. Rep. 5; 2 Russ. 9th Am. ed., 102; *People* v. *McDonald*, 43 N. Y. 64; *Smith* v. *People*, 53 N. Y. 113; 13 Am. Rep. 474; 2 Bishop's Criminal Law, sec. 813; *Rex* v. *Good*, 2 Car. & P. 422; 2 Bishop's Criminal Law, sec. 809; *Loomis* v. *People*, 67 N. Y. 322; 23 Am. Rep. 123; *Hildebrand* v. *People*, 56 N. Y. 395; 15 Am. Rep. 435; *Welsh* v. *People*, 17 Ill. 339; *Huber* v. *State*, 57 Ind. 341; 26 Am. Rep. 57; *People* v. *Abbott*, 53 Cal. 284; 31 Am. Rep. 59; *Commonwealth* v. *Barry*, 124 Mass. 325; *Queen* v. *Russett*, L. R. 2 Q. B. Div. 312.)

SEARLS, C.—An information was lodged against John Shaughnessy, the defendant and appellant here, by the district attorney of the city and county of San Francisco, charging him with the crime of grand larceny, alleged to have been committed at said city and county on the first day of September, 1894, by the felonious stealing, taking, and carrying away two thousand and eighty dollars, etc., the personal property of one Charles Anderson.

He was arraigned, tried, convicted, and sentenced to serve a term of four years in the state prison at Folsom, California.

From this judgment and from an order denying his motion for a new trial the defendant prosecutes this appeal. A general outline of the case as made by the prosecuting witness, Charles R. Anderson, may be stated thus: In July, 1894, said Anderson made the acquaintance of the defendant Shaughnessy, who professed to be familiar with games and gaming, and who was without money, while Anderson had, or professed to have, some four thousand dollars. The prosecuting witness had a wheel of fortune manufactured, and there were negotiations between the parties looking to a trip to South

America for gambling purposes, Anderson to furnish the capital and defendant the skill, the profits to be divided.

About the last of August a third man, a stranger named Sampson, appeared on the scene, made the acquaintance of the parties, and professed to come from South Africa, where he had made money. Defendant professed to have seen Sampson's funds, and to know that he had large means. Thereupon the three agreed to form a copartnership, go to South Africa, open a saloon, and engage in gambling.

An agreement was prepared, and on September 1st the parties started down town to execute this agreement. On Grant avenue they stopped at a saloon, at the request of Sampson, to take a drink, where said Sampson was informed he had drawn a prize in a lottery.

The parties then went to the lottery office, Anderson objecting, but is induced by the others to go upstairs, and to the room where the lottery is carried on. They there find a man in charge, who informs Sampson he has drawn one hundred and twelve dollars, of which sum he pays him one hundred and ten dollars, and, after some discussion, gives him lottery tickets for the two dollars, with which he draws a prize of some twenty dollars; receives more tickets, which he divides with Anderson, and they proceed to another drawing; whereupon Anderson is informed he has drawn an *approximate prize* of five hundred dollars, but that, to make it absolute, some five other drawings were necessary, and, in the mean time, and as the drawings progressed, the lottery company had a right to demand that certain assessments be put up as evidence of good faith; all of which assessments were to be returned to the player at the end of the drawings, together with the prizes won, if any.

Special drawings were then had, during which the banker called upon Anderson for deposits. He seems to have been in doubt; but, upon being assured by defendant and Sampson that they understood the game,

and that it was "square and fair," and, upon being assured by defendant that "it is all right; you won that five hundred dollars, and you better stick to it,": again he was assured that the money he put up was to be returned in any event, and "that he need not have any fears on that score," etc., whereupon, after going out repeatedly for more money, he placed in all upon the table some two thousand and eighty dollars, only to be told that at the sixth and last drawing, with but a single chance against him, he had lost.

The lottery man refused to return his money, and, upon his attempt to regain it, he was seized by defendant and Sampson, and held, while the banker secured it, they giving as a reason for so doing that they had seen one man killed in such an attempt, and did not wish to witness another such tragedy. We have not attempted a description of the *modus operandi* of the game, but refer to the description as given by an expert in *People* v. *Rose,* 85 Cal. 378, as conveying a fairly accurate delineation of the method pursued in the case at bar.

We need not pursue the subject by showing the devices used by defendant and Sampson to prevent Anderson from calling in the police, and to lull him into silence until Sampson and the so-called banker left the city.

It is sufficient to say there was evidence sufficient, if credited by the jury, to show a conspiracy, on the part of the defendant, Sampson, and the manager of the lottery, to cheat and defraud the prosecuting witness of his money by what is familiarly known as the bunco game.

The contention of counsel for appellant is that defendant is informed against for larceny under section 484 of the Penal Code, and that the evidence, if it shows the defendant to be guilty of any crime (which is not admitted), proves it to be that of fraudulently obtaining money by device, trick, etc., by the use of cards as defined by section 332 of the Penal Code, and while it is

"punished as in case of larceny of property of like value," is not made larceny by the code, and that a conviction of larceny cannot be had for a violation of said section.

The question is not whether defendant could have been indicted or informed against under section 332, and convicted upon the evidence presented, but whether under an information charging grand larceny in the usual form he was properly convicted.

There is a class of cases in which a party may properly be charged and convicted of either larceny, or under section 332 of the Penal Code. (*People* v. *Frigerio*, 107 Cal. 152, 153.)

As was said by the court in *People* v. *Tomlinson*, 102 Cal. 23: "Where one honestly receives the possession of goods upon a trust, and, after receiving them fraudulently, converts them to his own use, it is a case of embezzlement.

"If the possession has been obtained by fraud, trick, or device, and the owner of it intends to part with his title when he gives up the possession, the offense, if any, is obtaining money by false pretenses.

"But where the possession has been obtained through a trick or device, with the intent, at the time the party receives it, to convert the same to his own use, and the owner of the property parts merely with the possession, and not with the title, the offense is larceny." (Citing *People* v. *Raschke*, 73 Cal. 378; *People* v. *Johnson*, 91 Cal. 265; *People* v. *Laurence*, 137 N. Y. 517; *Commonwealth* v. *Lannan*, 153 Mass. 287; 25 Am. St. Rep. 629.)

This rule in reference to larceny prevails alike in England and the United States. In *The Queen* v. *Russett*, L. R. 2 Q. B. Div. 312, decided in 1892, Coleridge, C. J., said: "If the possession of the money or goods said to have been stolen has been parted with, but the owner did not intend to part with the property in them, so that that part of the transaction is incomplete, and the parting with the possession has been obtained by fraud, this is larceny." *People* v. *Smallman*, 55 Cal. 185, and *Peo-*

*ple* v. *Rae*, 66 Cal. 425, 56 Am. Rep. 102, are to like effect. The evidence in the case at bar fully sustains the position that the prosecuting witness did not intend to part with his property in the money, and that it was obtained by the rankest kind of fraud.

We repeat the testimony of Anderson: "All the money we would be called upon to put up during these drawings, at the end of the drawing, would be returned to us in full, in addition to any prizes we might win in the mean time, would be paid over to us, but if we failed to put up the money that the lottery company called for, that the company would not be called upon to pay, as that was all the percentage he had." At the end of the game the witness says: "I saw that I was swindled, and jumped up and tried to grab for my money. Shaughnessy (defendant) and Sampson grabbed me by the arms and pulled me back from the table, while the lottery man pocketed the coin."

This testimony is without conflict, except that defendant testified that his motive was to prevent a difficulty. Counsel also assigns as error the reading by the court below to the jury of section 332 of the Penal Code. The court stated to the jury as follows:

"The contention on the part of the people, as I understand it, is that this money, if taken at all from the prosecuting witness, was taken by fraud, trick, and device. The provision of our statute is as follows. [The court then quoted section 332 of the Penal Code.] Had it stopped here it would have been error, for the reason that the fraudulent obtaining of money by the methods specified in that section is not necessarily larceny, but we must read the instructions of the court together and as a whole, and the court further instructed as follows:

"The law is that when, by means of fraud or artifice, or any other kind of contrivance, the possession of property is fraudulently obtained from another, and the party obtaining this possession acquires it by means of this fraud and artifice, with the intention feloniously of stealing it when he gets possession of it, then the crime

is larceny, provided the owner of the property, who has thus deposited and loses its possession, still remains the owner of the property and has not parted with his title. One of the questions, therefore, for the jury to consider in this case is, whether there was a parting of the title on the part of the prosecuting witness. To state the rule again: If the possession of the money or goods said to have been stolen has been parted with, but the owner did not intend to part with the property in them, so that that part of the transaction is incomplete, and the parting with the possession has been obtained by fraud, that is larceny.

" Gentlemen of the jury: I again inform you that you are the exclusive judges of the facts, of what has been proven in the case, and of the credibility of the witnesses. It is for you to say: 1. Whether an offense has been committed; and 2. Whether the defendant had any part in the commission of it."

When thus taken together, and in connection with the other instructions given in the case, the law was properly interpreted by the court.

The instruction of the court upon the question of a reasonable doubt and a moral certainty are not open to just criticism.

Upon the whole record the defendant appears to have been fairly tried and properly convicted, and the judgment and orders appealed from should be affirmed.

VANCLIEF, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the judgment and orders appealed from should be affirmed.

McFARLAND, J., HENSHAW, J., TEMPLE, J.