[No. 10674.  Department One.  February 13, 1913.]

THE STATE OF WASHINGTON, *Respondent*, v. LEONARDO

FERRATO *et al.*, *Appellants.*[1]

INDICTMENT AND INFORMATION—LARCENY—BY BUNCO GAME—SUF-
FICIENCY. Under Rem. & Bal. Code, § 2601, subd. 2, providing that
every person who with intent to deprive the owner of any property
by any trick, device, bunco game or fortune telling . . . steals
such property and shall be guilty of larceny, an information is suf-
ficient if, rejecting additional matter as surplusage, enough remains
to charge the offense in the language of the statute, in the absence
of any motion to strike or make more definite, even though it did
not describe any trick, fraud or device.

LARCENY—BY TRICK OR "BUNCO GAME"—EVIDENCE—SUFFICIENCY.
A conviction of grand larceny, by means of a trick, device or "bunco
game," under Rem. & Bal. Code, § 2601, subd. 2, is sustained, al-
though the game played was an innocent game of skill, where it ap-
pears that the prosecuting witness was induced by three confeder-
ates to engage in a game of boccie with a reputed stranger as an
adversary, who was skilled in the game, that he was allowed to win
a few games, his measure taken, and then induced to play for $3,000,
the confederates pretending to contribute $5,000 towards a pre-
tended $8,000 stake, and that they never intended to allow him a
chance to win, but stole and divided up his $3,000 before the game
was over; any game, whether innocent or not, being a "bunco game"
if it is the design and conduct of those using it to give it that
character.

Appeal from a judgment of the superior court for King
county, Ronald, J., entered May 18, 1912, upon a trial and
conviction of grand larceny. Affirmed.

*William R. Bell*, for appellants.

*John F. Murphy, Hugh M. Caldwell*, and *H. B. Butler*,
for respondent.

CHADWICK, J.—The material parts of the information
upon which appellants were tried follow:

"That said Leonardo Ferrato, Sisto Roe and Bendetto
Arnardo, and each of them, in the county of King, state of

[1]Reported in 129 Pac. 898.

Washington, on or about the 26th day of March, 1912, with intent to deprive and defraud the owner thereof, did wilfully, unlawfully and feloniously obtain from one Jos. Aiassa, $3,000 in lawful money of the United States, the property of the said Jos. Aiassa, by trick, device and confidence or bunco game, in this, that said Leonardo Ferrato, Sisto Roe and Bendetto Arnardo and each of them upon the pretense that he, the said Jos. Aiassa might win and receive from said Bendetto Arnardo a like sum of $3,000 and the return of his own $3,000 upon the result of a certain game of boccie to be then and there played, whereas the said Leonardo Ferrato, Sisto Roe and Bendetto Arnardo, and each of them, did not intend that the said Jos. Aiassa should receive the sum of $3,000 of or from the said Leonardo Ferrato, Sisto Roe and Bendetto Arnardo, or either of them, nor did they or either of them intend that said Jos. Aiassa should or would have returned to him his own $3,000 so paid to said Leonardo Ferrato, Sisto Roe and Bendetto Arnardo and each of them as aforesaid, and the said Leonardo Ferrato, Sisto Roe and Bendetto Arnardo and each of them upon receiving of and from said Jos. Aiassa the said $3,000 in lawful money of the United States, did then and there take, steal and carry away the same, with intent to deprive and defraud the said Jos. Aiassa thereof, contrary to the statute in such case made and provided, and against the peace and dignity of the state of Washington."

A demurrer to this information was filed by the defendants upon the grounds, (1) that several separate crimes and offenses are included therein; (2) that the facts pleaded are not sufficient to charge the crime of grand larceny; (3) that the facts stated in said information are insufficient to establish the commission of any crime by the defendants or either of them; (4) that the facts pleaded therein show that the defendants have not been guilty of any offense whatsoever; (5) misjoinder of several distinct offenses.

Appellants assume that the information was designed to charge a crime under Rem. & Bal. Code, § 2471, defining the crime of swindling, and that inasmuch as the information sets forth an agreement to play a game of chance or skill, and no

trick, fraud, or device is described, appellants should not have been put to trial, or, being convicted, are now entitled to an arrest of judgment. We think this position is not well taken. It is insisted by the state that the information was drawn under subd. 2, § 2601, Rem. & Bal. Code, which, in so far as it is material to the present charge, reads as follows: .

"Every person,. who with intent to deprive or defraud the owner thereof, shall obtain from the owner or another the possession or title to any property . . . by any trick, device, bunco game, or fortune telling . . . steals such property and shall be guilty of larceny."

In the absence of a motion to strike or make more definite and certain, the parts of the information which are relied on to show that no crime is charged may be rejected as surplusage, and enough will be left under our practice allowing a crime to be charged in the language of the statute to pass the grounds of demurrer, and especially the ground that the information does not state facts sufficient to constitute the crime of grand larceny. The crime grand larceny being charged, and the part of the information objected to being treated as a matter of inducement, the information is sufficient; for we have a charge as nearly in the language of the statute as it can be made: "The said Leonardo Ferrato, Sisto Roe and Bendetto Arnardo and each of them, . . . by trick, device, and confidence or bunco game . . . upon receiving of and from said Jos. Aiassa . . . $3,000 in lawful money of the United States, did then and there steal and carry away the same with intent to deprive and defraud the said Jos. Aiassa thereof, contrary to the statute," etc.

It is next contended that the facts do not warrant the verdict; that the game of boccie is an innocent game, depending upon the skill of the players; that Joseph Aiassa, the prosecuting witness, voluntarily entered into the play for high stakes; that he admits that he expected to keep the money of his adversary if he won, and therefore no criminal

charge can be sustained. In a. sense, this is all true. But threading the whole narrative of the testimony, there is the track of fraud. It seems certain to us, as it did to the jury, that the prosecuting witness was the victim of a conspiracy to defraud him of his money. It is no defense that the game was as innocent as billiards, base ball, croquet, or wrestling. The game was an instrument in the scheme to bring the victim into play with an adversary, a reputed stranger who had been in this country but three months, and who, according to his own testimony, had taken several medals in the old country because of his skill as a boccie player. He was, to use the vernacular of the race track, a ringer. The defendants and Sisto Roe, who was not apprehended, did not intend to take any chance. Aiassa, the victim, was allowed to win two or three games played for small stakes. His measure was taken. It was then proposed that they play for a larger sum, and Aiassa drew nearly $3,000 out of the bank. Sisto and Leonardo pretended to contribute with him enough to match the $8,000 which Arnardo pretended to have. Sisto held the stakes. The game went on. During the game, Aiassa temporarily retired, and the three confederates decamped with the money. After dividing Aiassa's money equally, they fled to Butte, Montana, where Ferrato and Arnardo were apprehended. Sisto, the other confederate, escaped.

It is possible that, in the absence of a statute, one who lures another into a sure-thing game by exciting his cupidity might not be criminally liable. But fortunately the statute covers such cases. We think it is clearly proved that appellants never intended that Aiassa should win any money. They knew, as one of the appellants, who spoke at the trial of the others as his partners, admits, that Aiassa had no chance of winning against the skill of Arnardo, nor did they give him a chance if any he had. They stole the money before the game was over. The law does not demand, as a condition or as an element of the crime defined by our statute,

that the game employed by confidence men shall be an out-
lawed game. They sometimes employ them, but more fre-
quently do they employ one that seems legitimate to the in-
tended victim. Wrestling, foot racing, horse racing, pool,
ten-pins, or any game of endurance, chance, or skill, is apt
to be more attractive to the guileless, conceited, or avaricious
than a chuck-a-luck, strap, panel house, or badger game,
and less calculated to excite suspicion than the old-fashioned
gold brick whatever its wrapping may be. Even outlawed
games are innocent in themselves. Games never injure any
one. It takes a crooked player to make a crooked game, and
the law, as it is written in this state, is aimed against the man
and not against the inanimate dice, cards, billiard or boccie
balls. So any game, whether innocent or outlawed, may be
a bunco game, for it is the design and conduct of those who
use it that gives it its character under the statute. Any
trick, artifice, or cunning calculated to win confidence and to
deceive, whether it be by conversation, conduct, or sugges-
tion, is a bunco game within the meaning of the statute.

The prosecuting attorney has cited the following cases,
which sustain his theory and our conclusion: *People v.
Shaughnessy*, 110 Cal. 598, 43 Pac. 2; *People v. Mann*, 113
Cal. 76 (*People v. Mason*, 45 Pac. 182); *State v. Ryan*,
47 Ore. 338, 82 Pac. 703, 1 L. R. A. (N. S.) 862; *State v.
Donaldson*, 35 Utah 96, 99 Pac. 447, 136 Am. St. 1041,
20 L. R. A. (N. S.) 1164; *People v. Shaw*, 57 Mich. 403, 24
N. W. 121, 58 Am. Rep. 372; *People v. Miller*, 169 N. Y.
339, 62 N. E. 418, 88 Am. St. 546.

The testimony of the prosecuting witness is vigorously at-
tacked. Certain differences between his testimony and that
of other witnesses, and the fact that he did not publish the
fact of the robbery until the next day, are relied on. The
differences in the testimony, if any, appear trivial in the
light of the whole record. Aiassa's delay in going to the
police was explained to the satisfaction of the jury.

Error is predicated upon the giving and refusal to give

instructions.    We find no error in the instructions given, and the requested instructions were fully covered by those given to the jury by the court.

The judgment of the lower court is affirmed.

CROW, C. J., and MOUNT, J., concur.

PARKER, J. (concurring)—I concur in the result.    I think that when appellants decamped with the money, before the close of the game, they committed plain grand larceny, regardless of whether the game was a so-called "bunco game" or a fair game.    I am not ready to hold that the crime charged would have been committed had the game been completed and the staked money paid over in pursuance of the result of the game.    I fear the majority opinion may be so construed.

GOSE, J., concurs with PARKER, J.