[Crim. No. 493.   Third Appellate District.—April 3, 1920.]

## THE PEOPLE, Respondent, v. J. A. BICKERSTAFF, Appellant.

[1] CRIMINAL LAW—VIOLATION OF WYLLIE ACT—ALCOHOLIC CONTENT OF BEER—ERRONEOUS INSTRUCTION.—In a prosecution under the Wyllie Act for selling beer in no-license territory, the giving of an instruction by the court telling the jury that the amount of alcohol contained in the beer alleged to have been sold was immaterial is error which necessitates a reversal of a judgment of conviction.

[2] ID.—REASONABLE DOUBT AS TO ALCOHOLIC CONTENT—PROPER INSTRUCTIONS.—In such prosecution, requested instructions to the effect that alcoholic liquor as used in the Wyllie Act means liquor which contains one per cent by volume, or more, of alcohol, and which is not so mixed with other drugs as to prevent its use as a beverage, and that the jury should return a verdict of not guilty if it has any reasonable doubt as to whether the beverage sold was alcoholic within the meaning of said act, are in harmony with the decisions of the courts of this state, and should be given.

[3] ID.—KNOWLEDGE OF ALCOHOLIC CONTENT—ABSENCE OF DEFENSE.— Under the Wyllie Act, the selling of alcoholic liquors containing one per cent or more by volume of alcohol in no-license territory is forbidden, and it is no defense, in a prosecution for a violation thereof, for the defendant to prove that he did not know the liquor sold by him contained the prohibited amount of alcohol.

[4] ID.—REASONABLE DOUBT DEFINED — PROPER INSTRUCTION.—In a criminal prosecution, a requested instruction that "By reasonable doubt is meant that state of the case which after an entire comparison and consideration of all the evidence leaves the minds of the jurors in that condition that they cannot say that they feel an abiding conviction to a moral certainty of the guilt of the defendant," contains a clear statement of the law and should be given.

[5] ID.—STATEMENT OF DEFENDANT'S RIGHTS—PROPER INSTRUCTIONS.— In a criminal prosecution, a requested instruction which contains an explicit, clear statement of the defendant's rights not contained in other instructions should be given.

[6] ID.—SUSPICION—REASONABLE DOUBT—PREPONDERANCE OF EVIDENCE —INSTRUCTIONS.—In a prosecution for a violation of the Wyllie

---

4.  Propriety of instruction defining reasonable doubt as doubt for which juror can give reason, notes, 11 Ann. Cas. 1019; 16 L. R. A. (N. S.) 260.

Act, a requested instruction "that under the law no jury should, nor has it the right, to convict the defendant of a crime upon mere suspicion, however strong (nor simply because there may be a preponderance of all of the evidence of the case against him), nor merely because there is or may be strong reason to suspect that he is guilty (but before a jury can lawfully convict they must be convinced of the defendant's guilt beyond all reasonable doubt)," contains an accurate statement of the law and the rights of the defendants and should be given as requested and not modified by striking therefrom the portions thereof inclosed in parentheses.

[7] ID.—EVIDENCE — PROBABILITIES — INSTRUCTIONS.—In such prosecution, a requested instruction "that mere probabilities are not sufficient to warrant a conviction (nor is it sufficient that a greater weight of evidence supports the allegation of the information, if it does), nor is it sufficient upon the doctrine of chances that it is more probable that the defendant is guilty. (To warrant a conviction of the defendant he must be proven to be guilty clearly and conclusively beyond all reasonable doubt, so that there is no reasonable theory upon which he can be innocent when all of the case is considered together)," contains a correct statement of the law, and should not be modified by striking therefrom the parts embraced within the parentheses.

[8] ID.—AVOIDANCE OF REPETITION IN INSTRUCTIONS.—The trial judge should take care to give to the jury, once and in clear language, every principle of law applicable to the particular case; and instructions couched in varying language, but embodying the same principle of law, should not be given. (Opinion of supreme court on denial of hearing.)

[9] ID.—REASONABLE DOUBT — INSTRUCTIONS.—An instruction that reasonable doubt "is not a mere imaginary, captious, or possible doubt, but a fair doubt, based upon the testimony, reason, and common sense, and which leaves the mind in such a state that you cannot say that you feel fully and entirely satisfied of the defendant's guilt. In other words, it is that state of mind, after an entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say that they feel an abiding conviction to a moral certainty of the truth of the charge, a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are to act conscientiously upon it," although not as full and possibly not as clear as the instruction usually given, should not be considered erroneous. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Humboldt County. Denver Sevier, Judge. Reversed.

The facts are stated in the opinion of the court.

P. H. Ryan for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

ELLISON, P. J., *pro tem.*—An information was filed against the defendant in the superior court of the county of Humboldt, state of California, wherein he was accused of the crime of selling alcoholic liquors in no-license territory, the particular allegation being "that heretofore, to-wit, on the 29th day of July, A. D. 1919, the said J. A. Bickerstaff within the boundary of said 'no-license' territory, in supervisorial district number two, at and in the county of Humboldt, state of California, did willfully, knowingly and unlawfully, sell, furnish, distribute and give away alcoholic liquors, to-wit: beer and which was not so mixed with other drugs as to prevent its use as a beverage, to one William McKay."

After trial had the defendant was convicted, and from the judgment pronounced upon the verdict he prosecutes this appeal.

The appellant calls attention to many matters occurring during the trial which he claims were error and prejudicial to his rights. We deem it not necessary to state all of them, and in deciding the case shall only discuss those that seem to be of the most importance.

[1] The prosecution was had under the so-called Wyllie Act, [Stats. 1911, p. 599]. In construing said act the court determined that it prohibited the sale of beer regardless of the amount of alcohol contained in it, and regardless of whether it contained any alcohol at all, or not. Thus, in one instruction the jury were informed: "I charge you that if you find from the evidence beyond a reasonable doubt that at the time and place set forth in the information, the defendant did sell, furnish or give to William McKay beer or any other malt liquor, then I instruct you that it is not necessary that you should find that said beer or other malt liquor contained one per cent, or more, by volume of alcohol or that you should find that it contained any alcohol at all, but it is enough if you find beyond a reasonable doubt that

the defendant did at the time and place set forth in the information sell, furnish or give to said William McKay beer or malt liquor to warrant you in bringing in a verdict of guilty.''

The jury were give other instructions along the same lines. This was manifestly error, and in direct contradiction to the decisions of the higher courts of this state.

The case of *People* v. *Strickler,* 25 Cal. App. 60, [142 Pac. 1121], involved the construction of the meaning of this particular part of the Wyllie local option law. In fact, it is known that the district attorney of Colusa County purposely framed his information in that case for the purpose of getting a direct decision of the higher courts as to whether the selling of beer of less than one per cent by volume of alcohol was a crime or not, and in filing his information, in order that the matter might be squarely presented to the courts uninfluenced by any and all other considerations, he inserted in his information that the liquors sold by the defendant in that case were malt liquors *containing less than one per cent by volume of alcohol.* And it was his argument in that case that the statute made the selling of malt liquors, regardless of the amount of alcohol contained in them, a crime, and that the words ''any other liquor or mixture which contains one per cent or more by volume of alcohol'' were not intended to and did not qualify the previous words, ''spirituous, vinous and malt liquors.''

In deciding the case against the contention of the district attorney, the court used, among other expressions, the following: ''In the case of *People* v. *Mueller,* No. 231 (18 Cal. App. Dec. 220), this court was called upon to consider the proposition above. stated, and we there expressed the opinion that, while in charging the offense of selling or keeping for sale spirituous, vinous or malt liquors, it was not necessary to allege that such liquors contained the amount of alcohol specified in section 21, a conviction could not be sustained under such an indictment unless such liquors were shown to be intoxicating. This conclusion was reached mainly from the proposition, declared in the opinion in said case, that the terms 'spirituous,' 'vinous' and 'malt,' as generically designating certain kinds of liquors, must have been used by the legislature in their popular sense—that is to say, that they were used to describe, generically, those

alcoholic liquors commonly known as 'spirituous,' 'vinous' and 'malt' and which, it is known, will produce intoxication. We are still of the opinion, however, that the legislature did not intend to make it unlawful for one to engage in the business of selling nonintoxicating liquors. In other words, it is not reasonable to suppose that it was the legislative intent to contraband the traffic in spirituous, vinous or malt liquors possessing no intoxicating quality. To the contrary, it seems very clear, when we consider the ultimate object of the local option law, that the legislature thus aimed the shafts of its denunciation solely against any liquors the use of which would produce intoxication, and that, by specifying the quantity of alcohol which, when used in liquors, would bring them within the condemnation of the statute, it intended to and did establish a test applicable to all liquors the sale of which was designed by the statute to be prohibited in any territory to which the law might appropriately be made applicable. This conclusion is arrived at by a view of section 21 of the act by the light of the rule of construction, *ejusdem generis,* above referred to. In its practical application, this rule simply means that 'general and specific words which are capable of an analogous meaning, being associated together, take color from each other, so that the general words are restricted to a sense analogous to the less general.' Or, as this maxim was stated by Lord Tenterden: 'When the statute or other document enumerates several classes of persons or things, and immediately following and classes with such enumeration the clause embraces "other" persons or things, the word "other" will generally be read as "other such like," so that persons or things therein comprised may be read as *ejusdem generis* with, and not of a quality superior to or different from, those specifically enumerated.' This rule of construction is by no means of universal application, and its use is to carry out, not to defeat, the legislative intent. It must yield to another salutary rule of construction, viz.: that every part of a statute should, if possible, be upheld and given its appropriate force. But, in this case, since it is plainly manifest, as stated, that the purpose of the local option law is to suppress drunkenness and consequently the traffic in intoxicating liquors in those subdivisions where its operation is properly and legally

invoked, the rule of *ejusdem generis* may be applied to the construction of section 21 without doing violence to or rendering inoperative any part of said section or of the law. Indeed, a construction of section 21 by the light of that doctrine will manifestly lead to the upholding of all the provisions of the law agreeably to the evident legislative design at the bottom of its enactment.''

After decision by the appellate court in that case, a petition to have it heard in the supreme court was denied. In denying it the supreme court necessarily approved of the disposition made of the case by the appellate court, because, as stated, the case presented no question for the consideration of either court other than the construction of this particular section of the Wyllie local option law.

The giving of the instruction by the court telling the jury that the amount of alcohol contained in the beer alleged to have been sold was entirely immaterial was error which necessitates a reversal of the judgment.

[2] On this feature of the case the defendant presented certain instructions and asked that they be given to the jury, but the request was refused. Said instructions were in harmony with the decisions of the courts of this state, and should have been given. Among them was the instruction numbered 17, which reads as follows: ''If you have any reasonable doubt as to whether the beverage sold was alcoholic within the meaning of the Wyllie Act you will return a verdict of not guilty, and in this connection I charge you that alcoholic liquor as used in the Wyllie Act means liquor which contains one per cent by volume, or more, of alcohol, and which is not so mixed with other drugs as to prevent its use as a beverage''; also, instruction 18, which reads as follows: ''I charge you that if the beverage which defendant sold to McKay contained less than one per cent by volume, of alcohol, it was not unlawful to sell the same, and in determining the quantity of alcohol therein you are to give the defendant the benefit of every reasonable doubt, if any you have. You are to consider and weigh carefully all of the evidence in the case, and if you cannot say that you are satisfied beyond all reasonable doubt and to a moral certainty that said beverage contained one per cent or more, by volume of alcohol, you will find the defendant not guilty.''

46 Cal. App.—49

These instructions contained a clear and accurate statement of the law and of the rights of the defendant, and it is beyond controversy that he was entitled to have them read to the jury upon the trial of his case.

As the case may be tried again, some other matters are presented that should be considered. **[3]** It was the claim of the defendant that at the time he sold the beer he honestly believed, and had a right to believe, that it contained less than one per cent by volume of alcohol, and asked that the case be submitted to the jury upon that theory, and asked for a direct instruction to the jury that, if they believed that the defendant acted in good faith in selling the beer and in the belief that it contained less than one per cent by volume of alcohol, he should be acquitted. The court refused to give this instruction, and its action is assigned as error.

In the case of *People* v. *Pera,* 36 Cal. App. 292, [171 Pac. 1091], a similar question was raised, and it was decided against the contention of the appellant therein. In that case it was said: "It is complained that the court erred and thus seriously prejudiced the rights of the accused by instructing the jury that it was not necessary to the consummation of a crime of the character of the one with which the defendant is here charged that there should exist and be shown an intent to commit the act, and that, therefore, all that the jury were required to find, to reach a verdict of guilty, was that the defendant kept a place of public resort for the purpose of selling and distributing alcoholic liquors within no-license territory—that the specific intent with which the act was done was immaterial. We think the rule as declared by the instruction is correct in so far as it relates to a case of this character. The decisions appear to be quite uniform upon the proposition that where, in invoking and applying the police power, the legislature has prohibited certain acts and denounced them as criminal, the mere commission of such acts, regardless of the intent with which they were committed, is sufficient to constitute the crime so denounced. There are, perhaps, certain exceptions to this rule, as, for instance, where the statute itself uses language in describing or defining the crime indicating that *scienter* or a specific intent to do the act was essential to constitute it a crime. But particularly in cases interdicting the traffic in in-

toxicating liquors the rule generally is that the mere commission of the act is sufficient to consummate the offense, and in the present case the law authorizing the establishment of 'no-license territories' uses no language indicating an intention in the legislature to make the intent with which the act of keeping a resort for the purpose of selling intoxicating liquors is committed an ingredient of the offense. In *Commonwealth* v. *Holstein,* 132 Pa. St. 357, [19 Atl. 273], the court, having before it a case in which the defendant had been convicted of the unlawful sale of alcoholic liquor, said: 'It is not necessary to sustain a conviction for selling intoxicating liquors under the act of 1887 for the commonwealth to prove a criminal intent. It is enough to show the sale, when the defendant may, if he can, shield himself behind a license. If the sale is contrary to law, the intent has nothing to do with it. A contrary ruling would fritter away the act of 1887, and conviction under it would be rare.' "

And in the case of *People* v. *Allen,* reported in the 37 Cal. App., at page 180, [174 Pac. 374], the case of *People* v. *Pera,* 36 Cal. App. 292, [171 Pac. 1091], is referred to and approved, and it is added: "Section 13 of the act of April 4, 1911 (Stats. 1911, p. 599), provides as follows: 'It shall be unlawful for any person, . . . within the boundaries of any no-license territory to sell, furnish, distribute or give away any alcoholic liquors except as provided in section 16 hereof.' (Nothing in said section 16 has reference to the facts in this case.) Plainly, the rule applies in cases arising under this section, as it did in *People* v. *Pera,* which arose under the same statute though for a different offense."

Under those decisions it must be held that it is the law in this state that the selling of alcoholic liquors containing one per cent or more by volume of alcohol in no-license territory is forbidden, and that it is not a defense for the defendant to prove that he did not know the liquor sold by him contained the prohibited amount of alcohol.

We think the court erred in not giving some of the instructions asked by the defendant's counsel and in giving other instructions than those above referred to.

Upon the question of reasonable doubt the court instructed the jury as follows: "As the term 'reasonable doubt' is used a number of times in the instructions given, you will

bear in mind that it is always used in the same sense. It is not a mere imaginary, captious, or possible doubt, but a fair doubt, based upon the testimony, reason and common sense, and which leaves the mind in such a state that you cannot say that you feel fully and entirely satisfied of the defendant's guilt. In other words, it is that state of mind, after an entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say that they feel an abiding conviction to a moral certainty of the truth of the charge, a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are to act conscientiously upon it.''

An instruction telling the jury that a fair doubt can be based upon reason and common sense has been repeatedly condemned by the supreme court of this state. The latter part of the instruction is in approved language, but the first part weakens its force and effect.

In *People* v. *Paulsell*, 115 Cal., at page 12, [46 Pac. 734], it is said: ''If experimental departures from the well-established language sanctioned by all courts upon the subject of reasonable doubt are to be here allowed, and each trial court is to venture upon unusual language to express the idea contained in language so often approved, we will be afloat upon a new and unknown sea, and complications will arise in every criminal case coming here which will be very difficult to unravel. In the present case, it is sufficient to say that the court introduced the new and unused phrase 'common sense,' and told the jury that the doubt must be based upon that. Counsel for appellant argues—after giving some of the definitions of common sense to be found in the dictionaries—that this language is merely equivalent of saying that a jury should convict if they are satisfied of the guilt of the defendant to such a certainty as would influence their minds in the important affairs of life; which was held to be unsound by this court in *People* v. *Brannon*, 47 Cal. 96, *People* v. *Ah Sing*, 51 Cal. 372, and *People* v. *Bemmerly*, 87 Cal. 121, [25 Pac. 266]. It is sufficient to say, however, that the phrase 'common sense' is about as uncertain as any phrase in the language. When one speaks of common sense, he generally means his own common sense; and there is no warrant for the unnecessary use of such a term when

there is apt language to express the idea of reasonable doubt which has been frequently approved and pointed out as the language proper to be used. For this reason the judgment must be reversed.''

We hold that it was error to give the instruction as to reasonable doubt, modified by the expression that it must be based upon reason and common sense.

[4] In the same connection, attention is called to the very plain and explicit instruction asked by the defendant, numbered 6, and which was refused by the court. It reads as follows: ''By reasonable doubt is meant that state of the case which after an entire comparison and consideration of all of the evidence, leaves the minds of the jurors in that condition that they cannot say that they feel an abiding conviction to a moral certainty of the guilt of the defendant.'' This was a clear statement of the law, and should have been given as requested.

[5] We think, also, defendant's instruction numbered 5 should have been given. It reads as follows: ''A defendant in a criminal case is never required or expected to prove his innocence, but the burden is on the prosecution to prove the defendant guilty of the crime with which he is charged, and to prove every fact essential to constitute that crime, beyond all reasonable doubt and to a moral certainty; and if the jury cannot say after a careful consideration of all of the evidence in this case, that the guilt of the defendant has thereby been established beyond all reasonable doubt and to a moral certainty, it is their sworn duty to acquit the defendant.'' We find in the instructions of the court which were given no explicit, clear statement of the defendant's rights as embodied in this proposed instruction.

[6] Also, instruction 8, asked by the defendant, should have been given. It reads as follows: ''The court instructs you that under the law no jury should, nor has it the right, to convict the defendant of a crime upon mere suspicion, however strong (nor simply because there may be a preponderance of all of the evidence in the case against him), nor merely because there is or may be strong reason to suspect that he is guilty (but before a jury can lawfully convict they must be convinced of the defendant's guilt beyond all reasonable doubt).'' The court modified the

above instruction by striking out the words inclosed in parentheses, and, as thus modified, gave it to the jury. We think the defendant was entitled to have the instruction read to the jury as presented. It contained an accurate statement of the law and his rights, and he was entitled to have it presented to the jury.

[7] The defendant asked for instruction number 12, which reads as follows: "I further instruct you that mere probabilities are not sufficient to warrant a conviction (nor is it sufficient that a greater weight of evidence supports the allegations of the information, if it does), nor is it sufficient upon the doctrine of chances that it is more probable that the defendant is guilty. (To warrant a conviction of the defendant he must be proved to be guilty clearly and conclusively beyond all reasonable doubt, so that there is no reasonable theory upon which he can be innocent when all of the case is considered together.)" The court struck out all of said instructions embraced within the parentheses, and, as thus modified, gave it to the jury. As asked, it contained a correct statement of the law, and the defendant was entitled to have it given to the jury.

We are of the opinion that the law as stated in these requested instructions was not covered by the instructions given. The defendant was entitled to instructions telling the jury in clear language the conditions of the evidence that would make it their duty to acquit him.

Some other matters are referred to by defendant's counsel as having occurred at the trial, especially in the impanelment of the jury, which he claims were prejudicial to the defendant's rights, but, as it is not probable that the same incidents will be repeated upon the second trial, we deem it unnecessary in disposing of the case to enter into a discussion as to what effect, if any, such incidents had upon his rights.

For the reasons stated, the judgment is reversed and the cause remanded for a new trial.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied

by the supreme court on June 1, 1920, and the following opinion then rendered thereon:

THE COURT.—The petition for rehearing is denied.

We think it necessary to say, however, that we do not approve of all that is said in the opinion of the district court of appeal on the subject of the instructions given and refused.

[8] The opinion appears to approve the pernicious practice sometimes indulged in by the trial courts of repeating, over and over again, instructions couched in varying. language, but embodying the same principle of law. This is especially prevalent with regard to instructions relating to the presumption of innocence, reasonable doubt, and the degree of proof required of the prosecution. Repetitions of this character are not necessary and should be avoided as far as possible. Several of the instructions criticised in this case were given, in effect, in other instructions using somewhat different forms of expression but having the same meaning. The trial judge should take care to give to the jury, once in clear language, every principle of law applicable to the particular case. When he has done this, he is not required to repeat any of them, no matter how many separate instructions are asked which may include them. Such continual repetition tends to give undue emphasis to the particular point to which they may relate and operates to confuse the jury in their consideration of the evidence.

The instruction defining reasonable doubt criticised in *People* v. *Paulsell,* 115 Cal. 12, [46 Pac. 734], was approved in *People* v. *White,* 116 Cal. 17, [47 Pac. 771], and in *People* v. *Shaughnessy,* 110 Cal. 604, [43 Pac. 2]. [9] The instruction given on that subject in the present case is not substantially different from that under consideration in the three cases just cited, and we think it should not be considered erroneous, although it is not as full and possibly not as clear as the instruction usually given. We fully approve what is said in the Paulsell case, to the effect that trial judges should adhere to the well-established precedents in framing or approving instructions on the subject of reasonable doubt, and should avoid any attempt to frame new definitions of the term.

All the Justices concurred.