Filed 7/16/15  P. v. Minor CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KENNETH RAY MINOR,<br><br>Defendant and Appellant. | C077221<br><br>(Super. Ct. No. P13CRF0189) |

A jury convicted defendant Kenneth Ray Minor of burglary and forgery.  The trial court sentenced defendant to 10 years in prison, awarded presentence credit and imposed various fines and fees, including a $270 restitution fine and a $270 parole revocation fine.

Defendant now contends (1) the trial court erred in instructing the jury it could consider defendant's prior theft-related convictions to show identity and common design or plan; (2) the prosecutor's closing argument misstated the definition of reasonable doubt; and (3) the trial court violated ex post facto principles in ordering the $270 restitution fine because it intended to impose the minimum fine, which at the time was $200.

1

Regarding defendant's first contention of instructional error, the challenged instruction informed the jury that it could consider defendant's uncharged conduct to show identity and common design or plan. The uncharged conduct was admissible to show common design or plan because the evidence showed common features between the charged and uncharged acts. Although the trial court should not have instructed on identity because defendant's identity was not contested, any such error was harmless because the trial court directed the jury to disregard any instruction that did not apply to the facts, and in any event the evidence of defendant's guilt was overwhelming.

Defendant's second contention is forfeited because he did not object to the prosecutor's closing statements in the trial court.

As for defendant's third contention challenging the restitution fine, the challenge lacks merit because the amount imposed by the trial court was within the authorized range and there is no evidence the trial court intended to impose the minimum fine.

We will affirm the judgment.

BACKGROUND

The evidence at trial showed that on November 12, 2011, defendant entered a Mechanics Bank branch in El Dorado Hills and cashed a check made payable to him in the amount of $979.11. The check appeared to be drawn on the business account of Strategies to Empower People (STEP) and bore the facsimile signature of Claudia Loveless, STEP's Chief Financial Officer. Defendant endorsed the check by signing his own name; he provided the teller a California identification card, his correct address, and his thumbprint. He did not attempt to conceal his identity.

A week later, STEP notified the bank that the check was not authorized. The bank's investigator notified the police. Defendant was arrested after unsuccessfully attempting to cash a fraudulent check at PremierWest Bank in Rocklin, purportedly made payable to him in the amount of $1,251.39 by Pacific Contracting.

The Mechanics Bank investigator discovered two other checks defendant cashed on STEP's account. The first, for $1,251.09, was also cashed on November 12, 2011, less than two hours after the first check, at the Elk Grove branch of Mechanics Bank. The second, for $1,421.07, was cashed November 14, 2011, at the Napa branch of Mechanics Bank. Those checks were made out to defendant and he presented the same forms of identification.

According to Loveless, the check numbers on defendant's checks were out of sequence and their colors did not match those of genuine STEP-issued checks. STEP had never employed or done business with defendant, had not issued any checks to him, and had not authorized him to receive any payment from STEP.

An information charged defendant with second degree commercial burglary (Pen. Code, § 459 -- count 1),[1] forging a signature (§ 470, subd. (a) -- count 2), and passing or attempting to pass a forged check (§ 470, subd. (d) -- count 3). The information alleged that defendant had four prior convictions and served four prior prison terms (§ 667.5, subd. (b)) and that he had three prior convictions that constituted strike offenses (§§ 667, subd. (e)(2)(A), 1170.12, subd. (c)(2)(A)). The trial court granted defendant's motion in limine to bifurcate the prior conviction allegations and defendant waived his right to jury trial on those allegations.

Defendant did not put on any evidence. His counsel argued that his failure to conceal his identity or to act suspiciously while presenting the checks for payment showed he genuinely believed he was entitled to cash them.

The jury convicted defendant on counts 1 and 3 and acquitted him on count 2. The trial court found the enhancement allegations true and sentenced defendant to six years for the burglary, four years for the forgery (stayed pursuant to section 654), and an

---

[1] Undesignated statutory references are to the Penal Code.

additional four years for the enhancements, for a total of 10 years in prison. The trial court awarded 452 days of presentence credit and imposed various fines and fees, including a $270 restitution fine (§ 1202.4, subd. (b)) and a $270 parole revocation fine (§ 1202.45).

DISCUSSION

I

Defendant contends the trial court erred in instructing the jury that it could consider defendant's prior theft-related offenses pursuant to Evidence Code section 1101, subdivision (b) to show identity and common design or plan. He points out the parties had stipulated that this evidence could be used only to show intent. He further argues that the error was prejudicial because the jury could reasonably have been undecided about whether the People had proven intent, but allowing the jury to consider the priors for improper reasons might have tipped the balance against defendant. Defendant acknowledges he did not object to the instruction, but argues his arguments are not forfeited because the instruction affected his substantial rights. (§ 1259.)

Defendant's contention is properly before us despite trial counsel's failure to object because a defendant may challenge an erroneous instruction without having objected at trial. (*Lund v. San Joaquin Valley Railroad* (2003) 31 Cal.4th 1, 7.) Defendant does not contend the instruction was too general, unclear, or incomplete, grounds which would be forfeited absent an objection below. Rather, he contends the instruction was erroneous and misleading as applied to the facts. His claim of error is preserved even without objection. (*Ibid*.)

The People moved in limine to introduce evidence of defendant's subsequent uncharged check-cashing activities to show "[d]efendant's common plan or design and intent." They also sought to introduce nine of defendant's prior convictions to show "intent to defraud and lack of mistake in the present case."

4

After unreported proceedings, the trial court memorialized its in limine rulings on the record. The trial court stated that the People's in limine motion Numbers 7 and 8 were granted (permitting evidence under Evid. Code, § 1101, subd. (b) of the uncharged check-cashing conduct) and it also granted in part the People's in limine motion Number 9 (permitting evidence under Evid. Code, § 1101, subd. (b) of just two of defendant's prior convictions).

At the close of evidence, the trial court told the jury it would hear a stipulation by the parties. The prosecutor said: "The People and the Defendant have both agreed and stipulate that the Defendant suffered the following convictions: [¶] One, a violation of Penal Code Section 666, a felony, on September the 6th, 2007, in Sacramento County. [¶] Also, second, a violation of Penal Code Section 459, second degree, a felony, on July 2nd, 2013, in Placer County. [¶] These convictions are to be used for the limited purpose of deciding whether or not the Defendant acted with the intent to commit theft in this case and to defraud in this case." Defense counsel said: "That is the stipulation." The trial court stated: "That stipulation, then, is entered into the record." The parties' stipulation covered only the prior convictions, not the evidence of the uncharged acts.

The jury instructions conference was not reported. The trial court instructed the jury orally and in writing with CALCRIM No. 375 as follows, without objection from defendant:

"The People presented evidence that the defendant committed other offenses that were not charged in this case.

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden, you must disregard this evidence entirely.

5

"If you decide that the defendant committed the uncharged offenses, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not:

"The defendant was the person who committed the offenses alleged in this case;

"The defendant acted with the intent to commit theft and defraud;

"The defendant had a plan or scheme to commit the offenses alleged in this case.

"In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and the charged offenses.

"Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.

"If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the crimes charged. The People must still prove each charge beyond a reasonable doubt."

The trial court also instructed the jury pursuant to CALCRIM No. 200: "Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

Defendant contends the trial court erred in instructing the jury that it could consider defendant's "prior convictions" to show identity or common plan. But that misstates the instruction. The trial court instructed the jury that it could consider defendant's "uncharged offenses," which included his check-cashing activities after the charged offense. The People offered and the court admitted that evidence in part to show common design or plan.

"[E]vidence of a defendant's uncharged misconduct is relevant where the uncharged misconduct and the charged offense are sufficiently similar to support the

6

inference that they are manifestations of a common design or plan." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 401-402 (*Ewoldt*).)

"[I]n establishing a common design or plan, evidence of uncharged misconduct must demonstrate 'not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.' [Citation.]" (*Ewoldt, supra,* 7 Cal.4th at p. 402.)

"To establish the existence of a common design or plan, the common features [between the charged and uncharged acts] must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual. . . . [I]t need only exist to support the inference that the defendant employed that plan in committing the charged offense. [Citation.]" (*Ewoldt, supra,* 7 Cal.4th at p. 403.)

The evidence showed common features between the charged and uncharged acts. Defendant presented three counterfeit checks within two days at different branches of the same bank, drawn on the same account, bearing the same facsimile signature, employing check numbers in the same series, and made out to himself. He openly cashed them using his own signature. He provided other proof of his real identity and he did not attempt to disguise himself. A few days later, he presented a counterfeit check at a different bank, drawn on a different account, but again made out to him. He attempted to cash it without disguising his identity. The degree of similarity between the charged act and the uncharged acts was sufficient not merely to show a common design or plan, but to show identity, for which "the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts. [Citation.]" (*Ewoldt, supra*, 7 Cal.4th at p. 403.)

Nonetheless, the People did not request that the uncharged conduct evidence be admitted to prove identity, the trial court did not admit it for that purpose, and it was not

properly usable for that purpose because identity was not a disputed issue. "Evidence of identity is admissible [under Evidence Code section 1101, subdivision (b)] where it is conceded or assumed that the charged offense was committed by someone, in order to prove that the defendant was the perpetrator." (*Ewoldt, supra*, 7 Cal.4th at p. 394, fn. 2, italics omitted.) Defendant admitted he did the charged act; he disputed only intent. Therefore, the trial court should not have instructed the jury as to identity. The bench notes to CALCRIM No. 375 state: "The court must instruct the jury on what issue the evidence has been admitted to prove and delete reference to all other potential theories of relevance. [Citations.] Select the appropriate grounds from options A through H and delete all grounds that do not apply." (CALCRIM No. 375 (2014) p. 146.)

Such error was harmless, however. The trial court also instructed the jury to disregard any instruction that did not apply to the facts, and we presume they heeded that instruction. (*People v. Holt* (1997) 15 Cal.4th 619, 662 (*Holt*).) Moreover, the evidence of defendant's guilt on counts 1 and 3 was overwhelming. Contrary to defendant's claim, a reasonable jury could not have found, absent CALCRIM No. 375, that defendant's criminal intent as to those counts was open to reasonable doubt. No evidence was offered to explain how he could innocently have obtained the check he presented for payment, or how he could have believed in good faith he was entitled to cash it even though he had no connection to its purported issuer. Defendant has shown no prejudice from the challenged instruction.

## II

Defendant next contends the prosecutor's closing argument misstated the definition of reasonable doubt. He claims the prosecutor committed prejudicial misconduct by equating reasonable doubt to a matter of common sense.

In closing argument, the prosecutor stated: "Now, lastly, the standard beyond a reasonable doubt, that touches on common sense as well. The standard is beyond a reasonable doubt. For a doubt to be reasonable, it has to be based on one of three things:

8

[r]eason, logic, or common sense. If it is not based on one of those three things, it is not a reasonable doubt and you must return a verdict of guilty. [¶] So when you ask yourself what's reasonable -- and I had talked to you a little bit about jury selection [*sic*], about using your common sense during the trial and watching evidence and evaluating testimony, things like that. That's all I'm asking you to do here is just utilize your common sense and look at the evidence in that way. [¶] If you do that, if you use your common sense, your reasonableness, it is clear [defendant] committed these crimes with the intent to defraud. . . ." Defense counsel did not object or request an admonition to the jury.

Prosecutors should not define reasonable doubt in terms that could be taken to lower the People's burden. (*People v. Nguyen* (1995) 40 Cal.App.4th 28, 36 (*Nguyen*).) Assuming without deciding that the prosecutor did so, however, "an objection here and admonition by the court would have cured the error." (*Ibid.*) Defendant's challenge is forfeited because his trial counsel did not object to the alleged misconduct and defendant does not show that an objection and request for admonition could not have cured any harm arising from the prosecutor's remarks.

Defendant asserts objection would have been futile because the prosecutor's remarks correctly stated the definition of reasonable doubt in California (see *People v. Bickerstaff* (1920) 46 Cal.App. 764, 774-775 (opn. on den. of hg. by Supreme Ct.) (*Bickerstaff*)), but courts in other jurisdictions have disapproved that definition and we should follow those foreign decisions. This argument defeats itself: if the prosecutor correctly stated California law, her remarks could not have been misconduct.

Moreover, defendant's cited authorities, which deal with jury instructions, are inapposite, and the instruction which the lower court in *Bickerstaff* criticized but the Supreme Court called "not . . . erroneous" (*Bickerstaff, supra*, 46 Cal.App. at pp. 773-774, 775) did not resemble the remarks of the prosecutor in this case. However, the Supreme Court in *Bickerstaff* did state that trial judges should avoid attempting to

9

redefine reasonable doubt (*id.* at p. 775), the very principle which *Nguyen, supra*, 40 Cal.App.4th 28, reiterated as to prosecutors. Thus, far from foreclosing an objection to the prosecutor's remarks, *Bickerstaff*, like *Nguyen*, would have supported an objection.

Because the issue is forfeited, we need not consider defendant's claim of prejudice from the prosecutor's remarks. But we have already noted the overwhelming evidence against defendant on counts 1 and 3. In addition, the trial court correctly instructed the jury on the definition of reasonable doubt and told the jury it should take the law from the court's instructions, not from remarks of counsel. We presume the jury heeded those instructions. (*Holt, supra*, 15 Cal.4th at p. 662.)

### III

Defendant further contends the trial court violated ex post facto principles in ordering the $270 restitution fine because it intended to impose the minimum fine, which at the time was $200. The trial court also imposed a $270 parole revocation fine. We interpret defendant's argument to include the parole revocation fine.

Defendant is correct that the minimum amount for the restitution fine was $200 as of November 2011, when defendant committed his offenses. (Former § 1202.4, subd. (b); Stats. 2011, ch. 45, § 1, eff. July 1, 2011) The probation report recommended a restitution fine of $7,500. At sentencing, defense counsel asked the trial court to impose the minimum restitution fine and the prosecutor made no response. The trial court imposed a $270 restitution fine without explanation.

The amount of the restitution fine and parole revocation fine imposed by the trial court in this case was within the authorized range. Defendant assumes the trial court meant to grant defense counsel's request to impose the minimum restitution fine but "inadvertently" imposed a higher amount. There is no evidence in the record, however, that the trial court actually intended to impose the minimum fine. The amount imposed was below the $280 statutory minimum in effect at the time of sentencing, so that does not appear to be a basis for confusion. Where no error appears on the face of the record,

10

we will not conclude that the trial court misapplied the law or violated ex post facto principles. Rather, we presume the court knew and applied the correct law. (*People v. Coddington* (2000) 23 Cal.4th 529, 644.)

DISPOSITION

The judgment is affirmed.


                                                        MAURO            , J.


We concur:


      ROBIE            , Acting P. J.


      HOCH            , J.