Filed 8/28/14  P. v. Pina CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> JAVIER PINA, <br><br>     Defendant and Appellant. | H039455 <br> (Santa Cruz County <br> Super. Ct. Nos. F23107, F23036) |
| In re JAVIER PINA, <br><br>     on Habeas Corpus. | H040448 |

Defendant Javier Pina appeals from a conviction for possession of methamphetamine for sale (Health & Saf. Code, § 11378).  Pina advances four arguments on appeal.  First, he contends witness testimony suggesting he previously had been in jail incurably prejudiced his due process right to a fair trial.  Second, he maintains the prosecutor committed prejudicial misconduct in his closing argument by misstating the reasonable doubt standard.  Third, Pina argues the trial court prejudicially erred by finding three prior prison term enhancement allegations true.  Finally, Pina requests that we review the sealed portion of the affidavit underlying the search warrant authorizing the search of his person to determine whether the affidavit was properly sealed and whether the warrant properly issued.

Pina also filed a petition for a writ of habeas corpus, which we have ordered considered together with his appeal. In that petition, he asserts that his trial counsel rendered ineffective assistance by (1) failing to move for a mistrial and advance a due process argument based on the testimony as to his prior criminality and (2) not objecting to the prosecutor's statement in closing argument regarding the reasonable doubt standard.

Because the record does not contain all of the documents necessary for meaningful appellate review of the fourth issued raised on appeal--the propriety of the search warrant and the order to keep a portion of it under seal--we reverse and remand the matter. On remand, the trial court is directed to conduct and properly transcribe an in camera hearing with respect to Pina's motion. If, after those proceedings, the trial court again denies Pina's motion to quash and unseal, it shall reinstate the judgment. If the judgment is reinstated, Pina may again challenge on appeal the trial court's denial of the motion, as the record will then be adequate to provide for the appellate review we are unable to conduct in the present appeal. The petition for a writ of habeas corpus is denied.

I.      FACTUAL AND PROCEDURAL BACKGROUND

A.      *Search Warrant*

Santa Cruz Police Officer William Azua, Jr., requested a warrant authorizing the search of (1) Pina's person and (2) the premises at 304 3rd Street in Santa Cruz. The search warrant was supported by Azua's affidavit, which Azua requested be sealed to protect the identity of an informant. On June 14, 2012, a superior court judge issued the search warrant and signed an order sealing Azua's affidavit.

B.      *Pina's Arrest*

On June 21, 2012, eight Santa Cruz police officers were surveilling room 117 at a motel on Ocean Street in Santa Cruz. Santa Cruz Police Officer Alex Martin, an agent with the Santa Cruz County Narcotics Task Force, was the case officer in charge of the surveillance.

2

At about 1:00 p.m., Pina and a woman named Lisa Mercuri exited room 117. Pina was wearing a backpack and carrying a cell phone. At Agent Martin's direction, two uniformed officers stopped Pina and handcuffed him. Agent Martin approached Pina and the officers and told Pina why he was being detained. Agent Martin removed Pina's wallet from his pocket and searched it, finding Pina's identification and a small amount of money. Agent Martin also searched Pina's backpack, which contained newly purchased T-shirts, underwear, socks, and toiletries. In one of the pairs of socks, Agent Martin found seven small plastic baggies of crystal powder that he suspected to be methamphetamine.

Agent Martin tested a sample of the powder from one of the baggies and the test indicated the substance was crystal methamphetamine. In another pocket of the backpack Agent Martin found about two dozen empty plastic baggies of the same size as those containing the powder. A dozen of those empty bags had a black design on them.

For approximately an hour while Pina was detained Agent Martin had Pina's cell phone. The phone, which Agent Martin described as a "high end" smartphone, received about 10 calls or texts during that time.

Officers then searched room 117, which was registered to Mercuri. Inside the room, officers found a duffle bag containing women's toiletries and two small baggies of suspected methamphetamine. Mercuri told officers the duffle bag and baggies were hers. Officers also found an electronic pocket scale in the room. Nothing belonging to Pina was found in the room.

### C. *The Third Amended Information*

On January 8, 2013, Pina was charged by a third amended information with possession of methamphetamine for sale (Health & Saf. Code, § 11378). The information alleged one prior strike conviction within the meaning of Penal Code section

3

667, subdivisions (b) through (i),[1] and three prior prison terms within the meaning of section 667.5, subdivision (b).

### D. Pretrial Motions

Pina successfully moved to bifurcate the trial on the prior strike conviction and prior prison terms. He also moved to quash the search warrant that authorized the June 21, 2012, search of his person and to unseal the supporting affidavit. Following an in camera hearing, the trial court ordered portions of the affidavit unsealed but denied the motion to quash.

### E. Jury Trial and Guilty Verdict

A jury trial on the drug charge was held on January 9 and 10, 2013.

Agent Martin testified as an expert in the fields of narcotics enforcement and the possession of methamphetamine for sale. Agent Martin testified to the events of June 21, 2012, as described above. He testified that he found approximately 17 grams of methamphetamine in Pina's backpack.

Agent Martin opined that the methamphetamine was for distribution and not personal use for several reasons. First, he stated that 17 grams, while "not an extremely large amount," was more than a user would possess. According to Agent Martin, 17 grams of methamphetamine amounts to "over 85 doses" and was worth about $1,400. Even for a user who is high on methamphetamine for several days without sleeping-- something known as "going on a run"--"three or four grams over several days is a lot," said Agent Martin. Second, Agent Martin testified that the manner in which Pina's methamphetamine was packaged indicated it was for sale. Specifically, each baggie contained a similar amount of drugs. Third, Agent Martin stated that the empty plastic baggies in Pina's backpack were of the type typically used to break down larger amounts of methamphetamine into single doses for sale. According to Agent Martin, designs like

---

[1] Further unspecified statutory references are to the Penal Code.

4

those found on some of Pina's baggies are used by drug dealers to indicate the amount of methamphetamine in the baggie. Fourth, drug trafficking is common in the area in which Pina was stopped. Finally, Agent Martin opined that cell phones are commonly used by drug dealers.

On January 10, 2013, the jury convicted Pina of possession of methamphetamine for sale (Health & Saf. Code, § 11378).

### F. *Bench Trial on Priors*

The court held the bifurcated bench trial on the prior strike and three prior prison term allegations on January 14, 2013. With respect to the section 667.5, subdivision (b) prior prison terms, defense counsel argued that the evidence showed only two prior prison terms because two of the sentences relied on by the People were served in a single, continuous period of incarceration. The prosecutor disagreed. The court found that there was a prior strike conviction as well as three prior prison commitments.

### G. *Sentencing*

The court sentenced Pina on March 25, 2013. At sentencing, the prosecutor represented that--contrary to his argument at the bench trial--"only two valid [section] 667.5[, subdivision] (b) priors exist for the Court to sentence defendant on." The trial court sentenced Pina to a total term of four years eight months. His sentence consisted of the low term of 16 months for the possession of methamphetamine for sale conviction, which was doubled as a result of the prior strike conviction, for a term of 32 months. Consistent with the prosecutor's representation, the court imposed two prior prison term enhancements of one year each and struck the third prior prison term allegation.

Pina timely appealed.

## II. DISCUSSION

### A. *Due Process*

At trial, Agent Martin testified that he found "jail release papers" in Pina's backpack. Defense counsel moved to strike the testimony under Evidence Code section

5

352 and the court granted that motion.  The court also immediately admonished the jury not to use or consider the stricken testimony for any purpose.  On appeal, Pina contends the reference to "jail release papers" deprived him of his due process right to a fair trial because knowledge of his criminal record made a guilty verdict more likely.

### 1.    *The Due Process Challenge is Forfeited*

The People maintain Pina forfeited his due process challenge by failing to assert it at trial.  Pina argues his Evidence Code section 352 objection was sufficient to preserve the due process argument.

New constitutional arguments are not forfeited on appeal where they "do not invoke facts or legal standards different from those the trial court itself was asked to apply, but merely assert that the trial court's act or omission, insofar as it was wrong for the reasons actually presented to that court, had the additional *legal consequence* of violating the federal Constitution."  (*People v. Avila* (2006) 38 Cal.4th 491, 527, fn. 22.)  So long as "the trial objection fairly informs the court of the analysis it is asked to undertake," the objecting party need not "inform the court that it believes error in overruling the actual objection would violate due process."  (*People v. Partida* (2005) 37 Cal.4th 428, 437 (*Partida*).)

Here, Pina moved to strike Agent Martin's reference to "jail release papers" on the ground it was more prejudicial than probative under Evidence Code section 352.  Significantly, the court *agreed* and did precisely as Pina asked--it struck the testimony and admonished the jury not to consider it.  For the first time on appeal, Pina takes the position that the prejudicial effect of Agent Martin's testimony was not cured by striking it and admonishing the jury to disregard it.  In other words, he contends the resulting prejudice was incurable.  But the question of incurable prejudice was not before the trial court, and consequently Pina's argument on appeal is waived.  (*Partida*, *supra*, 37 Cal.4th at p. 435 ["A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct."].)

The different purposes served by motions to strike and motions for a mistrial confirm that Pina waived his current argument. "[A] motion to strike presupposes error of some sort" but allows "the trial . . . [to] go on to a conclusion." (*People v. Woodberry* (1970) 10 Cal.App.3d 695, 708.) By contrast, a "motion for mistrial presupposes error plus incurable prejudice" and requires that the trial be "terminated." (*Ibid*.) By not seeking a mistrial, Pina forfeited the argument that Agent Martin's testimony caused incurable prejudice.

2. *The Due Process Challenge Fails on the Merits*

Even if Pina had preserved the due process argument, we would reject it on the merits.

The erroneous admission of evidence violates due process where the evidence is so prejudicial it renders the trial fundamentally unfair. (*Partida*, *supra*, 37 Cal.4th at p. 439.) "There is little doubt exposing a jury to a defendant's prior criminality presents the *possibility* of prejudicing a defendant's case and rendering suspect the outcome of the trial." (*People v. Harris* (1994) 22 Cal.App.4th 1575, 1580, italics added.) And "a witness's volunteered statement"--like Agent Martin's here--"can . . . provide the basis for a finding of incurable prejudice." (*Id*. at p. 1581.) However, we conclude the single, fleeting reference to jail release papers was not incurably prejudicial. Defense counsel promptly objected and the court immediately struck the testimony and instructed the jury to disregard it. And the jury instructions included CALCRIM No. 104, which again ordered the jurors to disregard any testimony stricken from the record. We presume the jury followed both the court's admonition (*People v. Wash* (1993) 6 Cal.4th 215, 263) and the instruction. (*People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.)

Exceptional circumstances are needed to overcome that presumption. (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1224.) Whether exceptional circumstances exist "depends upon the facts in each case." (*People v. Allen* (1978) 77 Cal.App.3d 924, 935.) Such circumstances have been found in close cases in

7

which the defendant's credibility was fundamental to his defense. For example, *Allen* was "an extremely close case in which the jury had to make its fact determination based upon the credibility of the [defendant] and his witnesses and on the credibility of the prosecution's witnesses." (*Ibid*.) Under those circumstances, an admonition to disregard testimony that defendant was "on parole" was held to be insufficient to overcome the substantial danger of undue prejudice the testimony caused. (*Id*. at p. 938.) Similarly, in *People v. Ozuna* (1963) 213 Cal.App.2d 338, the court of appeal concluded an admonition to the jury could not remove the prejudicial effect of testimony referring to the defendant as an "ex-convict." *Ozuna* also was a close case. The defendant was charged with his girlfriend's murder. (*Id*. at p. 339.) He was the only eyewitness, and he told the police the gun had fired accidentally. (*Id*. at p. 340.) His first trial ended in a mistrial after the jury was unable to agree on a verdict. (*Id*. at p. 339.)

Defendant maintains this case, like *Allen* and *Ozuna*, was a "close" one in terms of whether he possessed the methamphetamine for sale or personal use. He contends the jury could have concluded that he had simply stocked up for personal use during a recent buy, a theory he claims finds support in Agent Martin's testimony about drug users "going on a run." We are not persuaded. Pina possessed approximately 17 grams (or 85 doses) of methamphetamine worth about $1,400, as well as baggies of the type drug dealers often use to sell smaller amounts of the drug. That evidence points strongly in the direction of sale, not personal use. Nor does Agent Martin's discussion of drug users "going on a run" support a personal use theory. Agent Martin testified that "three or four grams over several days is a lot," even for a user who is high on methamphetamine for several days without sleeping while "going on a run." Pina was found with four times that amount of methamphetamine.

8

In short, this case was not close like *Allen* or *Ozuna*, and no other exceptional circumstances exist to overcome the presumption that jurors followed the court's admonition and the instruction to disregard the "jail release papers" statement.[2] Accordingly, we reject Pina's claim that the testimony incurably prejudiced his right to a fair trial.

### B. *Prosecutorial Misconduct*

In his closing argument, the prosecutor told the jury "reasonable doubt is . . . the same thing as common sense. Now you're going to read the instruction but this is my interpretation of it. It's common sense." Pina urges that by equating reasonable doubt and common sense, the prosecutor lowered the People's burden of proof, thereby violating his Fifth and Fourteenth Amendment due process rights.

Pina acknowledges that he did not object to the prosecutor's statement at trial, but argues that there is no waiver because an objection would have been futile under existing California law. "Reviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence." (*People v. Welch* (1993) 5 Cal.4th 228, 237.) But this case does not involve a situation in which an objection to the claimed misconduct would have been futile under then-existent law but is now meritorious due to a change in the law. Instead, Pina claims that *existing* law forecloses his objection. Pina points to an opinion the California Supreme Court issued denying review of *People v. Bickerstaff*

---

[2] Pina also relies on *People v. Figuieredo* (1955) 130 Cal.App.2d 498, in which the court held that an officer's testimony that the defendant had been incarcerated in San Quentin deprived him of a fair trial. Like *Allen* and *Ozuna*, *Figuieredo* is distinguishable. There, the deputy district attorney intentionally elicited the testimony about San Quentin despite having assured defendant that if he admitted his prior convictions and did not testify those priors would never be known by the jury. (*Id.* at p. 506.) There is no suggestion of intentional prosecutorial misconduct in connection with Agent Martin's reference to jail release papers.

(1920) 46 Cal.App. 764. In *Bickerstaff*, the appellate court held it was error to instruct the jury that reasonable doubt was "a fair doubt, based upon the testimony, reason and common sense." (*Id*. at p. 772.) In denying review, the California Supreme Court disapproved of that portion of the court of appeals' analysis. Noting that the trial court's reasonable doubt instruction was similar to one it had twice approved, the Supreme Court stated the instruction "should not be considered erroneous, although it is not as full and possibly not as clear as the instruction usually given." (*Id*. at p. 775 [Supreme Court's opinion on denial of hearing].)

As the People point out, to the extent Pina is correct about the state of the law, we can reach the merits of his claim (for an objection would have been futile) but are bound to reject it (because binding Supreme Court precedent holds the statement was accurate). We need not decide whether California law permits a prosecutor to equate common sense with reasonable doubt because we conclude any error was harmless. (*People v. Nguyen* (1995) 40 Cal.App.4th 28, 35 ["To establish prosecutorial misconduct . . . it is necessary to show the right to a fair trial was prejudiced."].) The trial court instructed the jury as to the reasonable doubt standard, the prosecution's burden of proof based on it, and to ignore any contrary argument.[3] "We must presume the jury followed [those] instruction[s] [such] that [any] error was thereby rendered harmless." (*Id*. at p. 37.)

### C. *Prior Prison Term Enhancement Allegations*

Section 667.5, subdivision (b) requires the trial court to enhance the sentence of a defendant convicted of a felony by one year for "each prior separate prison term . . . [served] for any felony." Subdivision (g) of section 667.5 defines a separate prison term as "a continuous completed period of prison incarceration imposed for the particular

---

[3] Specifically, the trial court instructed the jury with CALCRIM No. 220 (reasonable doubt), CALCRIM No. 103 (the presumption of innocence and the People's burden of proof), and CALCRIM No. 200 ("If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions").

10

offense alone or in combination with concurrent or consecutive sentences for other crimes . . . ." Accordingly, "a defendant who has served concurrent or consecutive prison sentences on various commitments is deemed to have served only one prior prison term for the purpose of the enhancement provisions of Penal Code section 667.5." (*People v. James* (1980) 102 Cal.App.3d 728, 733.)

The information alleged Pina had served three prior prison terms for purposes of section 667.5. At the bench trial on those allegations, defense counsel argued that the evidence showed only two prior prison terms because two of the sentences relied on by the People were served in one continuous period of incarceration. While the People now concede defense counsel was correct, the prosecutor disagreed at the time. The trial court found all three prior prison term enhancement allegations to be true.

At sentencing, the prosecutor acknowledged that "only two valid [section] 667.5[, subdivision] (b) priors exist for the Court to sentence defendant on." Accordingly, the trial court imposed only two prior prison term enhancements of one year each and issued a minute order dated March 25, 2013, stating "[a]llegation of prior felony conviction(s)/prison term(s) No. 03 is stricken."

Based on the sentence and the March 2013 minute order, the People maintain there is no error to correct. Pina disagrees, arguing that the court's finding that all three prior prison terms were true, made on January 14, 2013, must be stricken.

Because the abstract of judgment and sentence reflect the court's later, corrected decision to strike the third prior prison term allegation, we agree with the People that there is no error to correct.

### D. *Propriety of Search Warrant and Order Sealing Supporting Affidavit*

Section 1534, subdivision (a), provides that the contents of a search warrant, including the supporting affidavit setting forth the facts establishing probable cause for the search, become a public record once the warrant is executed and returned. However, in *People v. Hobbs* (1994) 7 Cal.4th 948 (*Hobbs*), the California Supreme Court held that

if certain procedures are followed to preserve the defendant's right to challenge the validity of a search warrant, some or all of the search warrant affidavit may be sealed to protect the identify of a confidential informant. (*Id*. at pp. 955, 971-975.) On a properly noticed motion by a defendant to quash or traverse the warrant, the trial court "should conduct an in camera hearing." (*Id*. at p. 972.) At the hearing, the court is to determine (1) whether the affidavit has been properly sealed (*id*. at pp. 972-973); and (2) whether, under the totality of the circumstances presented in the entire affidavit and any testimony presented to the court, there was a fair probability that contraband or evidence of a crime would be found in the place searched pursuant to the warrant. (*Id*. at p. 975.) "*In all instances*, *a sealed transcript of the in camera proceedings*, and any other sealed or excised materials, *should be retained in the record* along with the public portions of the search warrant application *for possible appellate review*." (*Ibid*., italics added.)

Here, following an in camera hearing and review of the sealed affidavit, the trial court unsealed only portions of the affidavit and denied Pina's motion to quash the search warrant. Pina requests that we review the portion of the affidavit that remains sealed and the transcript of the in camera hearing to determine whether the affidavit remains properly sealed and whether the search warrant properly issued.

The transcript of the in camera hearing was not part of the original appellate record. This court ordered the record on appeal augmented to include a reporter's transcript of the January 7, 2013 in camera hearing and directed the trial court to provide a copy of that transcript. In response, we received a declaration from the court reporter stating that on January 7, 2013, "no proceedings in [this] matter were reported other than proceedings already transcribed per original notice."

As noted, *Hobbs* requires that "a sealed transcript of the in camera proceedings, and any other sealed or excised materials, . . . be retained in the record . . . for possible appellate review" (*Hobbs*, *supra*, 7 Cal.4th at p. 975), "[*i*]*n all instances*." (*Ibid*., italics added.) Without the transcript, we cannot conduct the "meaningful appellate review" to

12

which Pina is entitled. (*People v. Galland* (2008) 45 Cal.4th 354, 370.) In *Galland*, the California Supreme Court considered the proper course of action when the sealed warrant affidavit is missing from the record. The court held that, in that circumstance, "the proper procedure [is] to remand the case to the superior court with directions to hold a hearing to reconstruct or settle the record as to the missing search warrant affidavit and augment the record accordingly." (*Id*. at p. 373.) Consistent with *Galland*, we remand the case to the superior court to conduct and transcribe a new in camera hearing in full compliance with *Hobbs*.

## III. WRIT PETITION

In his petition for a writ of habeas corpus, Pina contends that his trial counsel's representation fell below the standards for effective assistance because his counsel failed to (1) move for a mistrial and advance a due process claim based on the "jail release papers" testimony and (2) object to the prosecutor's statement in closing argument equating reasonable doubt and common sense.

To obtain writ relief based on ineffective assistance of counsel, a petitioner must make a prima facie showing that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant. (*In re Hardy* (2007) 41 Cal.4th 977, 1018.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 669 (*Strickland*).) "The likelihood of a different result must be substantial, not just conceivable." (*Harrington v. Richter* (2011) __ U.S. __ [2011 U.S. LEXIS 912] [131 S.Ct. 770, 792].) We "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of

13

lack of sufficient prejudice, . . . that course should be followed." (*Strickland*, *supra*, at p. 697.)

Pina has failed to establish that trial counsel's alleged failings were prejudicial. For the reasons discussed above, Agent Martin's reference to jail release papers was cured by the court's admonition and instruction not to consider the testimony. Likewise, the court's jury instructions as to the reasonable doubt standard, the prosecution's burden of proof based on it, and to ignore any contrary argument rendered any prosecutorial misconduct related to the reasonable doubt standard harmless. Accordingly, we reject Pina's ineffective assistance of counsel claims.

## IV.    DISPOSITION

The order denying Pina's motion to quash the search warrant and unseal the supporting affidavit is reversed. The judgment is reversed and the matter is remanded to the trial court with directions to conduct an in camera hearing with respect to Pina's motion consistent with this opinion and with *People v. Hobbs* (1994) 7 Cal.4th 948, 971-975. If the trial court again denies Pina's motion to quash and unseal following the in camera hearing, it shall reinstate the judgment.

The petition for writ of habeas corpus is denied.

_____

Premo, J.

WE CONCUR:

_____

Rushing, P.J.

_____

Elia, J.